## BULLARD v. BOSTON & MAINE RAILROAD.

A verdict will be set aside for unwarranted remarks of counsel to the jury in closing, unless the presiding justice finds, as matter of fact, that the jury were not influenced thereby, or that the effect upon their minds was wholly removed by a retraction of counsel, the charge of the court, or in some other way.

Evidence that the custom of a railroad corporation was not to allow passengers to go forward from one car to another in getting out at stations; that the rear car of a train was frequently stopped at a certain point; and that several witnesses had been jarred and shaken up in getting out of the car at that place,—is admissible on the question of due care by the corporation in providing for the safety of passengers in alighting from the car at that place.

CASE, for injury to the plaintiff in alighting from the defendants' passenger car at Newton Junction.

It appeared that for some three weeks prior to the injury the plaintiff had been travelling over the defendants' road from Newton Junction to Haverhill, Mass., and back daily; that on the occasion of the injury she was returning home from Haverhill in the afternoon train; that she was in the rear car by the conductor's direction; that when the train stopped at the Junction this car was not opposite the depot platform; that the distance from the lower step of the car to the ground was about three feet; that the ground was level and the soil sandy; that the usual stopping time of the train at this station was from thirty to forty-five seconds; and that the plaintiff was injured in stepping or jumping from the bottom step of the car to the ground. She testified that she knew the rear car of the train did not ordinarily reach the platform, and that the place where she got out was a bad one. She also testified that the conductor assisted her in alighting at the same place shortly before the time of injury, and that he said it was a bad place. The accident occurred in the day-time.

The defendants claimed that the plaintiff could not recover, because of her knowledge that the place was a bad one for alighting, and of the situation generally, and her own carelessness in attempting to jump from the car; and moved for a nonsuit, which was denied.

One Rowell testified, subject to the defendants' exception, that he had got out of the car several times at the same place, and when the situation was the same as when the plaintiff was injured, and that it shook him up in getting off there. The plaintiff claimed that the defendants' custom was, not to allow passengers to go forward from one car to another in getting out at stations; and, subject to exception, Mrs. Tucker, a witness for the plaintiff, so testi-

fied. Subject to exception, the same witness was allowed to testify that passengers taking the train at Haverhill for upper stations were usually directed by the conductor to take the rear car; also, that she had jumped off the train several times at the place where the plaintiff did, and had felt the effects for half an hour or so.

The defendants' counsel, in his argument to the jury, commented on the fact that one of the physicians consulted by the plaintiff had not been put on by her as a witness. The plaintiff's counsel in reply said that the physician had not been called because he found from conversation with him that he had not examined the plaintiff, and could give no testimony as to her condition. To this the defendants excepted. The court sustained the exception, and told the jury to disregard the statement of the plaintiff's counsel; and thereupon counsel said he would take it all back.

Verdict for the plaintiff, which the defendants moved to set aside. The motion was denied, and the defendants excepted.

*Copeland & Edgerly*, for the defendants. The rules of decision recognized by courts in granting or refusing new trials in cases of error or mistake on the part of the court do not apply to cases of misconduct of a party, his attorney, or agent. Many of the cases cited by the plaintiff raise no question of misconduct, and therefore do not apply to this case. The case raises no question of fact. The court at the trial term found and reported the fact of misconduct; and the court at the law term has always decided cases of this sort, and set aside verdicts where it appears that the prevailing party, his agent, or attorney has been guilty of misconduct.

The rule recognized in *Perkins* v. *Knight*, 2 N. H. 474, was, that the jury "should be preserved not only from all improper bias in causes, but even from the suspicion of improper bias." In *State* v. *Hascall*, 6 N. H. 352, all of the jurors made oath that they had not read or heard read any papers such as were described in the affidavits offered by prisoner's counsel, and that they were induced to agree to the verdict from a consideration of the law and evidence given in at the trial, and from that only. Notwithstanding this the court set the verdict aside, saying, among other things, "We are not disposed to give any countenance to such a procedure in this or any other case. It is sufficient for this case that the exhibition of those papers was highly improper, and that there is a possibility that some of the jury may have heard something of the statements contained in them before the trial. We should not hesitate a moment to set aside a verdict obtained by a party in a civil case under such circumstances." In *McIlvaine* v. *Wilkins*, 12 N. H. 476, the court say,—"The verdict of a jury ought to be not only a true verdict upon the evidence, but it should be above suspicion." "The safest rule is, that the verdict should always be set aside if there appear the least attempt by a party to influence a juror." Underscoring portions of papers to

attract special attention without the knowledge of the opposing party is sufficient reason for setting aside a verdict. *Watson* v. *Walker*, 23 N. H. 421. The doctrine of the above cases is affirmed in *State* v. *Knapp*, 45 N. H. 159; *Hilliard* v. *Beattie*, 59 N. H. 466; *Tucker* v. *Henniker*, 41 N. H. 317; *Cross* v. *Grant*, 62 N. H.——

In none of the cases where misconduct was shown did the court require the innocent party to show affirmatively that the jury were influenced by the misconduct. In most cases it is impossible to ascertain. No one but members of the jury can tell what influences their minds; and as the evidence of a juror is not receivable to impeach the verdict, there is no way to establish by proof the fact that misconduct of a party influenced the verdict. It is sufficient that it is such misconduct as was calculated to have that effect, and might possibly have done so; and that is a question for the court here. The plaintiff contends that the instruction of the court was such an antidote as removed all effect of the poison. It may be, in cases of error or mistake: the correction of the error or mistake before the case closes obviates the effect of the error, but no such rule prevails in cases of misconduct. If it did, then counsel of skill and adroitness can make improper closing statements with impunity; if no objection is made, the misconduct will be waived; if objection is made, the court will instruct the jury to disregard it. In neither case does he run the least risk of injuring his case or imperilling his verdict.

*Marston & Eastman,* for the plaintiff. The presumption is, that the jury were not influenced by the language excepted to *Burnham* v. *Butler*, 58 N. H. 568; *Commonwealth* v. *Cunningham*, 104 Mass. 545–547; *Hilliard* v. *Beattie*, 59 N. H. 466.

The question whether the jury were influenced and the defendants' rights prejudiced by the remarks of the plaintiff's counsel, involves matters of fact, and should be determined by the court at the trial term. *Wentworth* v. *Jefferson*, 60 N. H. 158; *Burnham* v. *Butler*, 58 N. H. 568; *Hamblett* v. *Hamblett*, 6 N. H. 333; *Rogers* v. *Kenrick*, 63 N. H. 335; *Osgood* v. *Eaton*, 63 N. H. 355; *Gerrish* v. *Gerrish*, 63 N. H. 128; *Dearborn* v. *Newhall*, 63 N. H. 301; *Page* v. *Campton*, 63 N. H. 197; *Lefavor* v. *Smith*, 58 N. H. 125; *Fuller* v. *Bailey*, 58 N. H. 71; *Austin* v. *Ricker*, 61 N. H. 97; *Goodwin* v. *Scott*, 61 N. H. 112; *Hovey* v. *Brown*, 59 N. H. 114; *Brown* v. *Wiggin*, 59 N. H. 327; *Deerfield* v. *Northwood*, 10 N. H. 269.

The question in all cases is, whether poison has been injected, and had an influence upon the jury. Matters of provocation; character and manner of the rejoinder; whether in the heat of debate, or in altercation; whether the rejoinder is sufficient to remove the poison, or more or less than reasonably necessary to do this; the apparent effect upon the jury,—are all elements to be considered in reaching a conclusion upon this question; and who

is so well qualified to weigh all these elements as the court who is present at the trial? The question decided in *Wentworth* v. *Jefferson*, 60 N. H. 158, cannot be distinguished from the one involved in this case. There the exception was to the conduct of counsel; and it was urged that the offer was flagrant (in view of the fact that the court had previously denied the motion), and well calculated to influence the jury; but the court held that the finding of the court at the trial term was conclusive. The exception in both cases is to what is claimed to be the unwarrantable conduct of counsel in the presence and hearing of the jury. Upon what legal principle can it be suggested that one case is to be decided by the trial court, and the other by the court at the law term upon exception?

Counsel also cited and commented on *Hamblett* v. *Hamblett*, 6 N. H. 333; *Burnham* v. *Butler*, 58 N. H. 568; *Rogers* v. *Kenrick*, 63 N. H. 341; *Brown* v. *Wiggin*, 59 N. H. 327; *Osgood* v. *Eaton*, 63 N. H. 355; *Dearborn* v. *Newhall*, 63 N. H. 301; *Page* v. *Campton*, 63 N. H. 197; *Hovey* v. *Brown*, 59 N. H. 114; *Kelley* v. *Woodward*, 58 N. H. 153; *Daniels* v. *Lebanon*, 58 N. H. 284.

Smith, J. 1. The testimony of Rowell was competent upon the question whether the defendants provided safe and reasonable facilities for passengers to leave their trains at this point. Evidence that other passengers were injured in leaving the train at the same place tended to show that it was negligence in the defendants not to provide a longer platform. His evidence was also competent upon the question whether passengers left the train at this place with the knowledge or permission of the defendants. *Hall* v. *Brown*, 58 N. H. 93; *State* v. *M. & L. R. R.*, 52 N. H. 528.

The testimony of Mrs. Tucker was competent upon the question whether it was negligence in the plaintiff to leave the car where she did. If her testimony was true, a passenger in the rear car for that station must choose between leaving the car at a place which might be unsuitable, and being carried beyond the point of his travel a *quasi* prisoner. *Hall* v. *Brown* and *State* v. *M. & L. R. R.*, *supra*. Her testimony, that passengers taking the train at Haverhill for upper stations were usually directed by the conductor to take the rear car, was competent as tending to show the usage of the road, and how the defendants regarded it as being a proper place for passengers to leave the train. And her testimony as to the effect produced upon her by jumping from the train was competent, for the same reason as similar testimony from Rowell was competent.

2. In moving for a nonsuit, it must be assumed that the truth of the plaintiff's evidence was conceded. The evidence introduced by her tended to show that the defendants stopped their train before the car in which she was riding had reached the platform, that the rear car did not ordinarily reach the platform; that the

conductor had assisted her to alight at the same place a short time before; that other passengers were accustomed to leave the train at the same place; that she was in the rear car by the conductor's direction; and that passengers were not allowed to go forward from one car to another in leaving the train at stations. These facts were evidence from which the jury might find that the plaintiff exercised due care in leaving the train at a place which she knew was a bad one for alighting *(B. & O. R. R. Co.* v. *Leapley,* Md. Ct. Ap., June, 1886, 6 East. Rep. 187), and further might find that the defendants intended she should leave at that place. *Forsyth* v. *Boston & Albany R. R. Co.,* 103 Mass. 510, and *Frost* v. *Grand Trunk R'y Co.,* 10 Allen 387, are distinguishable from this case. In those cases there was no evidence that the defendants held out any inducement to the plaintiffs to do the acts by which they were injured. *Hulbert* v. *N. Y. C. R. R. Co.,* 40 N. Y. 145, is more nearly in point.

3. The defendants' counsel, in his argument to the jury, commented on the fact that one of the physicians consulted by the plaintiff had not been called by her as a witness. This was fair matter of argument. The defendants could rightfully ask the jury to believe that if the physician had been called his testimony would have been unfavorable to the plaintiff. However slight the weight such an inference ought to have, the jury could not be instructed that as a matter of law they were bound wholly to disregard it. The case does not raise the question whether any argument could have been legally advanced in reply. No argumentative reply was made; but the plaintiff's counsel said that the physician had not been called because he found, from conversation with him, that he had not examined the plaintiff, and could give no testimony as to her condition. If this hearsay proof of a material fact had been received from a witness, its unrevoked admission would have been corrected by a new trial. The physician conversed without the moral and legal sanction of an oath, and without the test of cross-examination. His conversation, not provable by a witness, was proved by a person not a witness, not sworn, and not subject to cross-examination. Had the plaintiff's whole case been proved in the same way, the error, although extended in fact over more ground, would not have been raised to a higher degree of illegality. If the plaintiff could retain a verdict obtained or enhanced by her counsel's unsworn assertion of inadmissible hearsay in argument, the actual wrong done the defendants would be no greater were it accomplished by other persons giving the jury the same kind of proof privately and criminally. The court had no more authority to admit the hearsay, and dispense with the oath and the opportunity for cross-examination required by law, than to render judgment without any form or pretence of trial upon a rumor casually heard in the street.

The law does not transfer the defendants' property to the plain-

tiff as damages without a fair trial; and in a legal sense a trial is not fair when such statements as were made in this case have ány influence favorable to the party making them. He is therefore bound to do everything necessary to be done to rectify his wrong, and restore to the trial the fairness of which he has divested it. He is legally and equitably bound to prevent his statement having any effect upon the verdict. This he cannot do without explicitly and unqualifiedly acknowledging his error, and withdrawing his remark in a manner that will go as far as any retraction can go to erase from the minds of the jury the impression his remark was calculated to make. But it is by no means certain that the jury will, at his request, disregard the fact stated. It is necessary that they should be instructed that the unsworn remark is not evidence, and can have no weight in favor of the party improperly making it. It is the duty of the wrong-doer to request such instructions. The other party does his duty when he objects to the wrong inflicted upon him, and does not allow it to be understood that he waives his objection. In spite of the fullest and frankest retraction, and the most explicit and emphatic instructions to lay the remark entirely out of consideration, the trial may not be fair. It may not be in the power of the retracting counsel and the court to remove the prejudice. Their combined and vigorous exertions may not control the mental operations of the jury. The jury may not be able wholly to free their memory or their judgment from the unfair and illegal impression made by a plausible statement of fact, which may seem to them entitled to more respect than the rule of law that excludes it. The statement, withdrawn not because it is contrary to the fact, but because it is not a legal mode of proving the fact, may do as much damage as if it had not been withdrawn. Erroneous testimony corrected by the witness who gave it, and an erroneous ruling corrected by the judge who made it, stand on different ground.

If a party should sit as a juror in his own case, it might not be enough for his counsel to request him to ignore his own interest, and for the court to instruct him that it is his duty to do so. If all the jurors had formed a decided opinion on the merits of the case before they were impanelled, the request of counsel and the instructions of the court not to be swayed by their former convictions, or by what they had heard at their lodgings, or read in the newspapers during the trial, might not make the trial fair. After everything possible is done, the bias of interest or previous opinion may not be wholly overcome. In such cases as this, the operation of the retraction and the requested instructions can be most accurately estimated at the trial term after verdict. *Burnham* v. *Butler*, 58 N. H. 568; *Cole* v. *Boardman*, 63 N. H. 580, 583. In some cases they may, and in others they may not, be effectual. Much may depend upon the sincerity and earnestness of the retractor's efforts to counteract his fault. If the trial is allowed to go on, he

will be bound, after verdict in his favor, to obtain a finding that the result was not affected by his tort, and ought not to be annulled on account of it. Whether the error is such that justice seems to require the trial to be stopped, and begun anew before another jury, immediately or after a lapse of time (*Hamblett* v. *Hamblett*, 6 N. H. 333, 347, *Penn. Co.* v. *Roy*, 102 U. S. 451, 459), is ordinarily a question of fact. If the trial is broken off, or the verdict set aside, there is a question of costs. Whatever is done, indemnification is the duty of the party by whom, for a time at least, the course of justice is interrupted and perverted. He is not entitled to a discharge of the jury, a waiver of the objection, or a gain of any advantage.

In *Brown* v. *Swineford*, 44 Wis. 282, the court, reversing a judgment and ordering a new trial on an exception of this kind, say,— " The learned counsel went beyond the legitimate scope of all argument, by stating and commenting on facts not in evidence. * * * The appellant took his exception; and his counsel now supports it by numerous cases. * * * All of them support the rule now adopted by this court, that it is error sufficient to reverse a judgment, for counsel, against objection, to state facts pertinent to the issue and not in evidence, or to assume *arguendo* such facts to be in the case when they are not. Some of the cases go further, and reverse judgments for imputation by counsel of facts not pertinent to the issue, but calculated to prejudice the case. * * * There are cases in conflict with those which support this rule. But, in the judgment of this court, the rule is supported by the weight of authority and by principle. Doubtless the circuit court can, as it did in this case, charge the jury to disregard all statements of fact not in evidence; but it is not so certain that a jury will do so. Verdicts are too often found against evidence, and without evidence, to warrant so great a reliance on the discrimination of juries. And without notes of the evidence it may be often difficult for juries to discriminate between the statements of fact by counsel, following the evidence and outside of it. It is sufficient that the extra-professional statements of counsel may gravely prejudice the jury and affect the verdict. * * * It is the duty of counsel to make the most of the case which his client is able to give him; but counsel is out of his duty and his right, and outside of the principle and object of his profession, when he travels out of his client's case and assumes to supply its deficiencies. Therefore is it that the nice sense of the profession regards with such distrust and aversion the testimony of a lawyer in favor of his client. * * The very fullest freedom of speech within the duty of his profession should be accorded to counsel; but it is license, not freedom of speech, to travel out of the record, basing his argument on facts not appearing, and appealing to prejudices irrelevant to the case and outside of the proof." In that case there was no retraction by counsel, and no finding of the fact of a fair trial.

In *Jacques* v. *B. H. R. R. Co.*, 41 Conn. 61, the plaintiff's damages were assessed by a judge without a jury. Certain evidence was admitted subject to the defendants' "objection to be heard in the argument." After the argument, this evidence "was ruled out and rejected, and no portion of it was considered by the judge, who so stated in open court when rendering his decision." The court say,—"Nor is the effect of this testimony upon the mind of the judge in reaching the decision pronounced on the merits to be entirely disregarded. We cannot accede to the claim of the plaintiff that the defendants could not have been injured by this testimony because it was ultimately rejected and ruled out. The operations of our minds are mysterious even to ourselves. We cannot always appreciate the influences which lead us to a result. No doubt the judge who tried the cause intended to disabuse his mind of any influence from this testimony. No doubt he was unconscious of being affected by it. Possibly he was not; still we do not deem it improbable that he was, especially when we look at the amount of damages assessed in the case, which seem to us unwarrantably large in view of the legitimate evidence." In *Dougherty* v. *Welch*, 53 Conn. 558, 560, the court say,—"No man can be quite certain that he is aware of all the influences which have produced conviction. It is one thing to prevent the entry of an influence into the mind; quite another to dislodge it." But the court also say,—"It would be impossible to conduct judicial investigations upon the theory that everything which reaches the ear of the trier affects his final determination of questions of fact beyond all power of resistance upon his part." Whether the final determination is thus affected is a question of fact; and in our practice the rule is that questions of fact are to be settled at the trial term.

In *State* v. *Towler*, 13 R. I. 661, 665, some of the cases are cited in which it is held that an error committed by the admission of incompetent testimony is cured by its subsequent rejection or withdrawal, if the jury are clearly directed not to regard it. "The ground of these decisions," say the court, "is that the testimony, after being rejected or withdrawn, is no longer legally before the jury, but is out of the case, and the jury being instructed to disregard it, it is to be presumed that they follow the instruction. The defendant contends that the rule ought not to be applied in the case at bar because the testimony was withdrawn, not as incompetent, but avowedly to remove all ground for exceptions. We think, however, that the rule does not depend on the motives which influence the withdrawal. The question is, Did the withdrawal take the testimony out of the case? If it did, it is to be considered as if it had never been admitted. We think the withdrawal, being by consent of court, is to be regarded as the act of the court, and that in contemplation of law it purged the case absolutely of the testimony. The defendant insists that the tes-

timony, though withdrawn, must inevitably have had an influence on the jury, and that this influence must have been aggravated by the statement of the prosecuting attorney that he had other witnesses to reputation which he withheld because of the defendant's objection. We have no doubt that juries are often influenced by extrinsic matters. We regret to say, too, that there is reason to think that lawyers sometimes do and say things for the purpose of producing an effect on the minds of a jury which is not legitimate. Such conduct may afford ground for new trial if there is reason to suppose the jury has been influenced by it, as indeed the erroneous admission of testimony, subsequently ruled out, may afford ground for a new trial if there is reason to think the jury has been influenced by it. But the true mode of getting a new trial on such ground is by petition addressed to the discretion of the court, and not by bill of exceptions; for we cannot presume that the jury has been influenced, and in a bill of exceptions the court exercises no discretion on matters of fact, but only grants a new trial where in point of law some material error has been committed. *Unangst* v. *Kraemer*, 8 W. & Serg. 391. The court does not get by a bill of exceptions the information which will enable it to exercise a judicial discretion. In the case at bar we are informed only in regard to what occurred in the matter of the rulings which are reported for revision. For anything that appears, the evidence against the defendant, independently of the evidence of reputation, may have been utterly overwhelming, and there may be no foundation whatever for the supposition that the jury was influenced either by the evidence of reputation, or by the reprehensible remarks of the prosecuting attorney."

In a capital case, if the prosecuting officer, having introduced a great amount of every kind of incompetent testimony, should at last meet repeated objection by informing the jury, expressly or by insinuation, in an observation addressed to the court, that he had a convincing mass of similar evidence of the prisoner's guilt, but would withhold it for the purpose of avoiding technical exceptions, and for the same purpose would withdraw what had been objected to, the withholding and withdrawing might be an effective part of the state's case, and the life of the accused might be endangered by his exercising his right of objection. The law would not depend upon the motive of the prosecuting officer; but having violated the right of fair trial, and necessarily assumed the affirmative and the burden of proof on his implied plea in confession and avoidance that he had made complete amends, his apparent motive, whether avowed or inferred, might be important evidence on the question of fact raised by that plea. *State* v. *Towler* is an authority for a conclusive legal presumption, on a bill of exceptions in such a case, that the jury are not influenced by the illegal proceeding if they are finally instructed to disregard it, and for the rule that the defendant's remedy is a petition for a new

trial. After judgment of conviction in a criminal case, a new trial may be granted on the defendant's petition, when justice has not been done, through accident, mistake, or misfortune, and a further hearing would be equitable. *Buzzell* v. *State*, 59 N. H. 61. In the present case the illegal proceeding occurred during the trial, and in open court; and if a supplementary petition for a new trial is a possible remedy, it is unnecessary. *State* v. *Ayer*, 23 N. H. 301, 320; *Allen* v. *Aldrich*, 29 N. H. 63, 75; *State* v. *Knapp*, 45 N. H. 148, 157–160. In our simple and convenient system of practice, if the indisputable error was harmless, that fact can be found on the plaintiff's motion at the trial term. The party violating the right of fair trial accepts the burden of presenting and proving his claim that he has made full restitution, and that the decision of the jury was not affected by his admitted wrong. On the question of influence, his acknowledgment, retraction, and apparent motives, the instructions given at his request, and the verdict, are evidence, but do not shift the burden of proof; that burden is not to be unjustly thrown upon the other party by putting him to a petition for a new trial; nor is his exception unjustly overruled by a conclusive legal presumption as to the effect of instructions. If a perfect reparation of the violated right is not found as a fact, the injured party remains entitled to redress; and neither on exception nor on petition can the fact be falsely found by an inference of law. A discretionary power of compelling him to submit to an unfair trial is not vested in the court. What is called judicial discretion in such a case is a performance of the duty of correctly deciding the question of fact at the trial term. *Bundy* v. *Hyde*, 50 N. H. 116, 120; *Darling* v. *Westmoreland*, 52 N. H. 401, 408.

The defendant is entitled to a new trial unless the plaintiff obtains an amendment of the record, supplying the fact that has not been found. If the plaintiff desires an opportunity to move for such an amendment, the case will be continued *nisi* to await the result of a hearing on his motion.

BLODGETT, J., did not sit; the others concurred.