FOSS v. BOSTON & MAINE RAILROAD.

Notice to a railroad conductor that a passenger going on his train is in fee-
    ble health is notice to the corporation, and the omission by the passenger
    to repeat such notice to another conductor who takes charge of the train
    before the end of the journey does not constitute contributory negligence.
The question whether a passenger who is in feeble health is guilty of con-
    tributory negligence in attempting, with the assistance of the defendants'
    servants, to alight from the cars at an unsuitable place, the train having
    been drawn beyond the station, is for the jury.

CASE, for injuries in alighting from the defendants' train and
walking from 500 to 700 feet to the passenger station at Row-
ley, in consequence of the train's having overshot the station.

The plaintiff, who was in feeble health, took the defendants' cars
at Rochester, N. H., July 31, 1888, having a ticket for Rowley,
Mass.   Her husband assisted her into the car which went through,
with her valise which weighed from fifteen to twenty pounds, and
which she was unable to carry because of her weakness.   He then
went to Jefferson, the conductor of the train, and said to him,
"I have seated my wife in the third seat from the front end of that
car (pointing it out), on the left side, and she has a valise in the
seat with her.   She is going through to Rowley, and is n't very
well, and is not able to lift her valise and get off the cars without
assistance, and I wish you would look out for her and see that
she has assistance in getting from the cars at Rowley."   Jef-
ferson replied that he was not going through himself, but that he
would speak to the conductor who would take the train at Con-
way Junction, and " it will be all right."   Her husband went into
the car and informed the plaintiff of what had passed between him
and the conductor, and that she need give herself no uneasiness, as
she would be looked out for.   The plaintiff proceeded on her journey
to Conway Junction, and thence with new conductors and new
train hands to Rowley, without changing cars, and her ticket was
punched and taken up by the conductor.

The plaintiff's evidence tended to show that at Rowley the train
overshot the platform, so that she had to walk back to the station,
some 500 to 700 feet.   The evidence tended to show, and her own
testimony was, that the train did not stop, but only slowed up, at
Rowley.   As the train slowed up the station was called, and she
rose up in her seat and stepped out into the aisle.   Finding the
train still moving, she stepped to the door and spoke to the assist-
ant conductor, Odell, and asked him if the train did not stop so
she could get out.   He said " You can't get out now: the train is
in motion."   She then told him it was very necessary for her to
get off at Rowley, and very necessary for her to have her baggage.

The train was stopped, and a brakeman came and took her baggage, and he and Conductor Odell, or some one else, helped her from the train. When the conductor or brakeman took her baggage out of the car, he said, " Come, hurry up and get off." With their assistance she jumped down a distance of twenty-two inches from the lower step of the car to the ground, at a place where there was no platform or any convenience for alighting. She claimed to have received an injury to her side by being compelled to alight in this manner, and said she felt something give way in her side when she jumped down. She also claimed to have received an injury to her health by being compelled to alight in the manner and at the place described, and by the fatigue induced by walking back to the platform. Her testimony was, that at that time she was unable to walk more than six or eight rods; that she had not walked farther than six or eight rods at one time for a year before that time, and that walking made her breathe short and caused pains in her side and lungs. She testified that the ground she was obliged to walk over in getting to the station was rough, and that it was very hard walking and made her very tired.

The plaintiff did not claim that she said anything to the employés about her feeble condition further than what was said to the conductor at Rochester, or that she objected in any way to taking the jump down from the car step, or that she told them that she was in such a state of health or feebleness as to make it hazardous for her to step down, until she was on the ground; but she testified that being seated on the opposite side from the depot she did not see it when she passed it, and when she was directed to leave the car she supposed she was to alight upon the platform; that upon ascertaining that she had been carried past the depot, and being much excited by the situation, and told to hurry up, she did not observe the distance she would be compelled to walk until she had left the car, and that as soon as she discovered the situation she said, " Have I got to walk back as far as that? I have not walked so far for a year;" to which the reply was, " Yes, that is the station, and look out you do n't get under the cars;"—and the train started on immediately.

Upon this evidence the defendants moved for a nonsuit.. The motion was denied, and the defendants excepted.

The defendants requested the court to charge the jury as follows: " If the plaintiff was sick, or from any cause unable to take care of herself, she should have been provided with proper attendants. If she was in such a condition of health that she could not alight at that place, she, knowing her condition and the railroad employés being ignorant of it, should have notified them of it, and should have had them set back the car to the platform; she had no right to get off there at the risk of the company, and cannot recover for any injuries she then received. The law does not contemplate

that it is any inconvenience, loss of time, expense, or injury to a person, in sufficiently good health to travel without an attendant, to be carried beyond the platform by the overshooting of the train so far as to be obliged to walk four or five hundred feet over a walk of not extraordinary difficulty. If she was unable to lift her baggage, as she says she was, she should have had it checked; and this was still more her duty, because she said she did not need it till she reached her place of destination. In the case, when as she claims the train overshot the platform, the railroad discharged all its duty to the plaintiff when its employés helped her alight, without objection on her part as to the place or manner of alighting at the place described by her, there being no unusual change at that point, her injury resulting, not from any unusual danger incident to alighting at that point, but to the undisclosed condition of her health. As there is no pretence or claim that any of the defendants' servants were informed by her, or had any intimation from any other source, that she was suffering from any physical disability till after she got off the train, they had a right to presume that she was capable of getting off the car with the aid of two of the employés, and also capable of walking the distance she walked to the platform.

"In order to make the railroad liable for the injuries received by her in getting off the car, or in walking back, because of any physical disability from which she suffered, it was necessary for her to tell the employés at the time about her disabled condition, so that they might provide suitable conveniences for her to descend from the cars, or so that they might back up for her to get off. It was not sufficient merely to inform the conductor at Rochester, who did not run through to Rowley, that she was suffering from physical disability which prevented her from walking four or five hundred feet, or from getting off the cars without help, but she was also under obligation to inform the employés on whom at that time devolved the duty of helping her off, about her disabled condition. That she cannot recover for any injury caused by fatigue induced by walking from the place of getting off to the station. When this new situation arose, of her getting off at this place under these circumstances, not contemplated when she was put on the train at Rochester, it was incumbent on her to inform the employés there present of her feeble condition."

The court declined to give the instructions, except so far as they are covered by the following instructions given, and the defendants excepted.

Upon these points the court charged the jury in substance that it was the duty of the defendants, under their contract with the plaintiff, to provide suitable cars and conveniences for the safe carriage and delivery of the plaintiff at a suitable place at the termination of her journey, and to exercise the highest care in the performance of this service to guard against injury to the plaintiff, and

that it was the duty of the plaintiff to exercise reasonable care to avoid injury during the journey. Was the plaintiff injured by alighting from the cars and walking to the station ? and if so, was the injury caused by the defendants' fault in leaving her at an unsuitable place ? If the place was suitable and the defendants fully performed the duty they owed to the plaintiff, the defendants are not liable for any injury the plaintiff may have received. If the place was unsuitable and the plaintiff received injury in consequence, the defendants are liable therefor, unless the plaintiff's want of care contributed to the injury. Was the plaintiff in fault for being left at that place, or for leaving the car without objection or without saying anything about her feeble condition ? Was she induced to alight there by the defendants' servants ? Did her want of ordinary care contribute to her injury ?

In determining the question of the care exercised by the plaintiff and by the defendants, the evidence that the plaintiff's husband informed Conductor Jefferson at Rochester that the plaintiff was feeble and would need assistance, and that Jefferson said he would notify the conductor who was to take the train at Conway Junction, and it would be all right, and that the plaintiff's husband so informed her, is material. Knowledge communicated to Jefferson was notice to the defendants of the plaintiff's condition, and she was not required to notify every other conductor and train hand on the train. Was the plaintiff in fault in relying upon the assurances given her that Jefferson would notify the conductor who took the train at Conway Junction, and that it would be all right ? The question of care is to be determined upon the state of things existing at the time. If the plaintiff's want of due care under the circumstances in which she was placed contributed to cause her injuries, the verdict should be for the defendants. If the plaintiff received injuries through the fault of the defendants and without fault on her part, she is entitled to a verdict for damages.

The defendants excepted to the charge as to the notice to Jefferson. Verdict for the plaintiff.

*Russell & Boyer* and *W. L. Foster*, for the plaintiff.

*Worcester & Gafney* and *J. A. Edgerly*, for the defendants.

ALLEN J. The motion for a non-suit for want of evidence to charge the defendants was properly denied. The plaintiff, without apparent fault of her own, was carried some distance—five hundred to seven hundred feet—beyond her destination to which she had a ticket, and was there hurriedly assisted from the car to the ground over steps the lowest of which was twenty-two inches above the ground. The injury she received in jumping to the ground was aggravated by being compelled to walk from her landing-place to the station. In the flustered state of her mind, and the fear of being carried beyond her destination, she did not notice the distance

of the car step from the ground. She had a right to rely on the assistance offered by the conductor and brakeman at such a place, and if they failed to assist her from the car without injury, the fault was the defendants' and not hers. However this may be, the question of her own negligence or want of care was fairly submitted to the jury, whose verdict, under the instructions, has left her free from fault.

The case in principle is not different from *Bullard* v. *Railroad,* 64 N. H. 27, where the plaintiff was injured on leaving the train, the rear car of which, in which she was riding, not having reached the station platform. She was injured on leaving the car by steps about three feet from the ground. The plaintiff recovered a verdict, and the court, in the opinion, decided that " these facts were evidence from which a jury might find that the plaintiff exercised due care, in leaving the train at a place which she knew was a bad one for alighting, and, further, might find that the defendants intended she should leave at that place."

In that case the car step was fourteen inches farther from the ground than in the present case; but the plaintiff had no assistance in alighting, and the distance from the station platform was very much less. The question of the reasonable care of the parties was the same in each case. The defendants' first exception is overruled.

The defendants requested the instruction, that the plaintiff, enfeebled as she was, should not have attempted to get off the car at the place she did, but should have notified the attendant train hands of her condition, that they might have set the train back to the station, where she could have alighted on the platform in safety; that no notice being given them of her feeble condition, she cannot recover. Such a request was properly refused. It left out of sight the fact that, at the time, the train had passed the station platform a long distance, and that the step of the car from which she must jump was too high for a well person to step from safely. The request, too, leaves out of sight the flustered condition of the plaintiff's mind under fear of being carried beyond her destination, and the fact that until she struck the ground she was not aware that the car had passed beyond the station platform. The instruction which the court gave was sufficiently explicit. The jury were told that " if the place [where the plaintiff left the car] was suitable, and the defendants fully performed the duty they owed to the plaintiff, the defendants are not liable for any injury the plaintiff may have received. If the place was unsuitable, and the plaintiff received injury in consequence, the defendants are liable therefor unless the plaintiff's want of care contributed to the injury. Was the plaintiff in fault for being left at that place, or for leaving the car without objection, or for not saying anything about her feeble condition ? Was she induced to alight there by the defendants' servants ? Did her want of ordinary care contribute to her injury ?"

These pertinent instructions and inquiries made to the jury were plain and explicit, covered the ground of the case, contained the settled law on the subject, and were sufficiently favorable to the defendants.    The exception to the refusal of the defendants' request is overruled.

A special exception was made to the instruction, that, in determining the question of care exercised by the defendants and the plaintiff, the evidence that the plaintiff's husband informed Conductor Jefferson, at Rochester, that the plaintiff was feeble and would need assistance, and that Jefferson said he would notify the conductor who was to take the train at Conway Junction, and it would be all right, and that the plaintiff's husband so informed her, is material. Knowledge communicated to Jefferson was notice to the defendants of the plaintiff's condition, and she was not required to notify every other conductor and train hand on the train.    A conductor who had charge of the train and the oversight of its passengers was the person to whom a knowledge of the plaintiff's health and need of assistance in leaving the train should be given, and the plaintiff had a right to rely on his assurance that he would inform the conductor beyond.    The question was one of due and reasonable care.    The plaintiff relied, and had a right to rely, on Jefferson's giving his successor the information about her condition. And if the conductor failed to bring her condition to the notice of the conductor who followed him, his neglect could not be charged upon the plaintiff.    The defendants were as much affected by Jefferson's knowledge as they would have been by the same facts communicated to the superintendent or one of the directors of the road in season to have made use of them.    The defendants had no reasonable ground of complaint on account of the instructions.

*Judgment on the verdict.*

CLARK, J., did not sit : the others concurred.