Hillsborough, ¿
  Dec. 1, 1903. ¿

### Batchelder v. Manchester Street Railway.

Where proffered evidence is excluded by the court in chambers, subject to exception, the ruling is to be regarded as the law of the trial, without further question as to its correctness; and the subsequent introduction of the substance of the excluded matter, by means of suggestive inquiries addressed to a witness, or during a colloquy with opposing counsel, furnishes sufficient cause for setting aside a verdict, in the absence of an affirmative finding that the jury were not influenced thereby.

Case, for negligence. Trial by jury and verdict for the plaintiff. Transferred from the January term, 1903, of the superior court by *Wallace*, C. J.

The evidence tended to prove the following facts : The defendants operated a line of street railway between the city of Manchester and Massabesic lake in the summer of 1900, and at the latter place maintained a pavilion and a theater. They transported large crowds of people to and from the pavilion. On the evening of August 28, the plaintiff, having attended the theater, was attempting to get upon a car to return to the city, when she was pushed under the car by the crowd and injured, in consequence of the failure of the defendants to take the precautions required by ordinary care to guard their passengers from injury.

The plaintiff's counsel having stated in his opening to the jury that he desired to show the conduct of similar crowds at that place prior to the time of the accident, and the defendants objecting, the court directed the counsel to omit further reference to the matter until he offered the testimony. At the conclusion of the opening, the counsel said : "Now, gentlemen, that is how the accident happened, and the blame we attach to the street railway is just this : that with a full knowledge of conditions out there they ran their car around that curve at a speed which was too rapid under the circumstances ; that with those people hanging on to the sides of the car and being carried along with it, they ran it further down into the crowd that stood waiting for it on both sides of the track, and beyond the place where they were required to stop, the length of a car, striking against this girl, throwing her down under the car, and getting her foot under the wheels." The defendants excepted to this statement.

At a hearing before the court in the absence of the jury, the plaintiff offered to show "that other crowds, similar in numbers and character to the one at the time of the accident, assembled at the same place for the same purpose on almost all fair evenings during the summer of 1900 up to the time of the accident ; and that after the extra cars had gone at the close of the theater performance, a portion of them always went to the curve next north of the pavilion and attempted to board the cars,—some of them seizing the grab-rails and running along with the car into the main body of the crowd, which always closed in and rushed and scrambled to get aboard of the car." The court excluded the testimony as a matter of discretion and because of its incompetency, and the plaintiff excepted to each ground of the ruling.

The plaintiff's counsel asked a witness called immediately after the foregoing ruling, and who, it appeared, had been to the lake frequently on the defendants' cars prior to the accident that summer, the following questions, each of which was excluded subject to the plaintiff's exception : "How did those crowds to which you have just referred compare with the one on the night of the

accident in other respects than as to numbers? What was the conduct of these crowds to which you have referred as being there previous to the accident, in regard to boarding or attempting to board the cars as they came in at or near the north curve? What was the custom or general practice of the crowds to which you have referred as to catching hold of the grab-rails on the east side of the car at or near the north curve, and running along with it until the car stopped, upon the occasions when you were there during the summer of 1900 previous to the accident?" After the court had excluded the questions, the defendants excepted to the statement of them in the presence of the jury.

During the cross-examination of a witness for the defendants, a discussion arose respecting the competency of a question proposed by the plaintiff's counsel, who affirmed, in substance, that a much less degree of care would be required in the operation of the cars if there were a rail or some contrivance to keep people from getting on and off the cars while in motion, than if there were none. The defendants' counsel said, "That depends upon the crowd." The plaintiff's counsel replied, "I have shown that; I offer now to show your conduct there with previous crowds that year and years before." The defendants excepted to this remark.

*Brown, Jones & Warren*, for the plaintiff.

*Taggart, Tuttle & Burroughs*, for the defendants.

CHASE, J. The ruling of the court excluding the testimony offered by the plaintiff was the law of the trial, even if upon further examination it should be found that the testimony was competent (*Bullard* v. *Railroad*, 64 N. H. 27; *Felch* v. *Railroad*, 66 N. H. 318, 320; *Mitchell* v. *Railroad*, 68 N. H. 96; *Tyler* v. *Railroad*, 68 N. H. 331; *Shute* v. *Company*, 69 N. H. 210), and did not fall within the class of testimony which the court may, in the exercise of their discretion, reject or receive according as they find that its bearing upon the main issues of the trial is or is not remote. The exception afforded the plaintiff full protection from the evil results of any error in the ruling. It was her duty and the duty of her counsel to submit to the ruling modestly, however confidently they questioned its correctness, and to avoid any attempt to influence the jury to disregard or override it. An orderly and fair trial of a case cannot be had without a rule of this kind.

The particular questions for consideration are whether this duty was violated, and if so, whether the defendants' rights were prejudiced by the violation. The first of these questions must be answered in the affirmative. The ruling made in chambers was unambiguous and included all the points covered by the three

·questions that were asked the witness in the presence of the jury. There was no necessity for asking the questions to preserve the plaintiff's rights. As has been previously remarked, her rights were fully protected by the exception taken in chambers. No excuse has been offered for asking the questions, and no reasonable excuse is apparent. There was a plain violation of duty on the part of counsel, and the plaintiff's verdict must be set aside in consequence of it if it does not clearly appear that the defendants' rights were not prejudiced thereby.

Two reasons are given by the plaintiff for her position that the asking of the questions was harmless to the defendants. She says, in the first place, that the evidence called for by the questions was competent. In other words, if the jury inferred answers that were favorable to the plaintiff, and considered them in arriving at a verdict, no wrong was done; for the jury should have had the testimony laid before them under a ruling of the court. Aside from the necessity, already alluded to, of having the court's rulings implicitly regarded as the law of the trial, both by the counsel and the jury, there is a further conclusive answer to this position, namely, that the testimony went before the jury without the safeguards arising from a cross-examination of the witness and with no opportunity for the introduction of opposing testimony. Though the defendants asked for the ruling, they are not in fault because of it. They had a right to oppose the reception of any testimony which they believed to be incompetent. The plaintiff, and the plaintiff alone, must be held responsible for the one-sided character of the trial, so far as this testimony rendered it one-sided.

The plaintiff further says that no testimony was introduced by the questions, and that the jury could not draw inferences unfavorable to the defendants from the asking of them. It is true that the questions are not in a declarative form; but they are very suggestive of the testimony which the plaintiff was seeking, and the suggestion becomes more definite as the questions multiply. The jury might not be able to infer from the first question what particular conduct the counsel had in mind. The second question makes this plainer: " What was the conduct of these crowds . . . in regard to boarding or attempting to board the cars as they came in at or near the north curve?" The last question is more definite still, and states (in an interrogative form, to be sure) the substance of the testimony which the plaintiff wanted to lay before the jury: ·" What was the custom or general practice of the crowds . . . as to catching hold of the grab-rails on the east side of the car at or near the north curve, and running along with it until the car stopped, upon the occasions when you were there during the summer of 1900 previous to the accident?" The mere putting of the

questions conveyed to the jury the information that on previous occasions during the summer of 1900 crowds of people boarded or attempted to board the defendants' cars at or near the curve, and that it was the custom of the crowds to lay hold of the grab-rails on the east side of the car at or near the curve and run along with the car until it stopped.    Under the court's ruling, it was not proper for the jury to have this information.    The fact that the information was conveyed to them by means of questions instead of declarations is immaterial.    *Demars* v. *Company*, 67 N. H. 404,. 407; *Dow* v. *Weare*, 68 N. H. 345, 346.    The multiplication and progressive suggestiveness of the questions rendered them more impressive.    The subsequent offer to show the defendants' previous. conduct with crowds that year and years before, made by the plaintiff during a discussion relating to the competency of proffered testimony, again called attention to the matter in an emphatic manner,. and had a tendency to deepen the impression made by the questions.    The remark of the defendants' counsel, to which the offer was a reply, must be understood as referring to the size of the crowd—not its conduct.    In view of the ruling in chambers and its repetition when the questions were asked, the making of the offer was not justifiable.    *Little* v. *Railroad, ante, p.* 61.    While the allusion to the matter in the opening statement to the jury is. not of itself sufficient ground for disturbing the verdict, it had a tendency to increase the liability of the questions to affect the fairness of the trial.    The natural tendency of the conduct of the counsel, as a whole, was to influence the jury to believe that the action of the crowds on previous occasions was such as to endanger the safety of persons desiring to board the defendants' cars, and to make it their duty, in the exercise of reasonable care, to take special precautions to guard against the danger.    It does not clearly appear that the conduct did not have this effect and was: not prejudicial to the defendants.    The failure of the plaintiff to pursue the course suggested in *Bullard* v. *Railroad*, 64 N. H. 27, prevents her from asserting here that it did not have such effect in fact.

*Exceptions sustained : verdict set aside : new trial granted.*

BINGHAM, J., did not sit : the others concurred.