THE STATE OF KANSAS V. GEORGE BALCH AND R. M. WATSON.

1. SECTION 215 OF CRIMINAL CODE, *Violated; Error, Not Cured.* In a criminal action, where the prosecuting attorney, in making his argument to the jury, claims that the defendant is guilty because he failed to testify in the case and deny the facts alleged against him, and the defendant is afterward found guilty by the jury, *held,* that for such irregularity on the part of the prosecuting attorney, the defendant, on his motion, should be granted a new trial; and that a mere instruction from the court to the jury that the jury should not pay any attention to what was said by the prosecuting attorney with regard to the defendant's failure to testify, is not sufficient to cure the error committed by the prosecuting attorney.

2. ALLEGED LIBEL, *When Privileged.* In a criminal prosecution for libel, evidence was introduced tending to show that the defendant, who was an elector of Chase county, Kansas, circulated an article among the voters of such county containing some things that were untrue, and derogatory to the character of the prosecuting witness, who was then a candidate for the office of county attorney of said county. *Held,* That if the supposed libelous article was circulated only among the voters of Chase county, and only for the purpose of giving what the defendant believed to be truthful information, and only for the purpose of enabling such voters to cast their ballots more intelligently, and the whole thing was done in good faith — such article was privileged, and the defendant should be acquitted, although the principal matters contained in the article may have been untrue in fact, and derogatory to the character of the prosecuting witness.

*Appeal from Chase District Court.*

INFORMATION against *George Balch* and *R. M. Watson,* for libel. Trial at the May Term, 1883, when the defendants were found guilty, and each was fined $10 and adjudged to pay one-half of the costs of the prosecution. They appeal. The opinion states the facts.

*S. N. Wood, Madden Bros.,* and *Waters & Ensminger,* for appellants.

*S. P. Young,* county attorney, for The State.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal prosecution against George Balch and R. M. Watson for an alleged criminal libel. The case was tried before the court and a jury; and the defendants were found guilty, and each sentenced to pay a fine of $10, and each adjudged to pay one-half of the costs of the suit. The defendants now appeal to this court.

The alleged libel was the circulation, on November 6, 1882, in Chase county, Kansas, of the following printed article, to wit:

"*Voters of Chase County:* ·The people of Chase county have not forgotten the mutilation or changing of the election returns one year ago; and is it not time the people should know who the parties were that made the changes? The facts looking in that direction have as yet never been made public, and perhaps never will, but circumstances often show facts that cannot be controverted; and in this case if Mr. Norton was guilty of the said mutilation, was not Mr. Carswell equally so? It is said upon reliable authority that Mr. Norton and Mr. Carswell were together all the evening and the night this deed was committed, in fact slept together in Mr. Norton's room in the court house. If they were together, as is said, is it possible that Mr. Norton would do so dastardly a trick without the knowledge and consent, if not the assistance of Mr. Carswell? Voters, think of this. Also, that it is a well-known fact that this said Carswell worked for and supported, with all his might, Mr. Norton, for the office of sheriff of Chase county. Can you consent to intrust in the hands of a character such as an action of this kind would indicate, the most important office in the county, that of county attorney? GEORGE BALCH."

It appears from the evidence, among other things, as follows:

"That the defendant R. M. Watson was given the manuscript from which the alleged libelous article was 'set up' and printed by one Harris; that the name of George Balch, defendant, was signed thereto; that neither the manuscript nor his signature was in the handwriting of the defendant George Balch; that defendant Watson set up the article

alleged to be libelous, printed it, and delivered it, and gave all the printed copies to the said Harris, and was paid for the same as a job printer, which was the only connection he was shown to have had with the alleged libelous article; that the prosecuting witness, C. H. Carswell, was at the time the regular democratic nominee for county attorney, to be voted for at the November election, 1882; that the prosecuting witness, Carswell, did not procure, cause, or know of the changes or alterations made in the election returns as stated in said alleged libel; that the defendant George Balch admitted to the prosecuting witness, Carswell, that he had published said alleged libelous article."

In November, 1881, the time referred to in the alleged libelous article, there were three candidates for sheriff—William Norton, F. H. Barrington, and the defendant Balch; and the changes referred to were made by taking votes from Balch and Barrington and adding them to Norton. The evidence further shows:

"That prosecuting witness, Carswell, stated to P. J. Norton, in the presence of one C. Berst, that 'they had made too many changes from Balch to Norton; that they should have taken less votes from him [Balch], and more from Barrington; that the greenbackers were watching every vote for their candidates; that Balch, the defendant, was at the time greenback candidate for sheriff, and has been at all times and for years past a legal voter of Chase county, Kansas."

The defendant George Balch did not appear as a witness, and did not testify in the case; and whether the defendant R. M. Watson was a witness or testified in the case, the record does not show.

After all the evidence was introduced in the case, and after the charge of the court was given to the jury, the county attorney proceeded to make an argument in the case, when the following proceedings occurred, as is shown by the record, which proceedings read as follows:

"The opening argument of the plaintiff was made by the county attorney, who in the course of his remarks to the jury said 'That it was in evidence that the libel charged in the information was circulated all over the county, with the name of the defendant George Balch printed thereto; that the de-

fendant Balch knew it was so circulated; that this fact made
a *prima facie* case against him; that the defendant Balch had
not offered any testimony denying that he signed and circu-
lated the libel; that he had failed to go on the witness stand
(emphasizing and pointing to the witness chair) and deny
that he had not signed or circulated that libel.'    Here the
county attorney was requested to stop by defendant's counsel,
who then and there excepted to the remarks of said county
attorney; that upon the attention of the court being called to
the said remarks, he informed the county attorney that they
were improper and could not be made, and stated to the jury
that they should not pay any attention to the same; that
under the law the defendants, or either of them, had a per-
fect right to refrain from testifying without having the failure
to testify commented on or even alluded to by the state; that
the jury would violate their duty if they considered at all the
failure of defendant Balch to testify; that thereupon the
county attorney turned to the jury and stated to them 'that
he had forgotten, and had probably gone beyond what he
should have done,' and proceeded in his argument without
further allusion to the defendant's (Balch's) failure to testify."

There are several questions involved in this case, and some
of them are difficult.    The first question that we shall con-
sider is with reference to the statement made by the county
attorney to the jury, calling their attention to the fact that the
defendant Balch had not testified in the case, and had not
denied, as a witness, that he had signed and circulated the
alleged libelous article.    This statement was in violation of
law, and under our own statutes and the decisions of other
courts under similar statutes, we think it will require a re-
versal of the judgment of the court below, and the granting
of a new trial.    Section 215 of the criminal code provides,
among other things, that defendants in criminal cases may
testify in their own behalf if they choose to do so; but also
provides "that the neglect or refusal of the person on trial
to testify  .  .  .  shall not raise any presumption of guilt,
nor shall that circumstance be referred to by any attorney
prosecuting in the case, nor shall the same be considered by
the court or jury before whom the trial takes place." (Laws
of 1871, ch. 118, §1; Comp. Laws of 1879, ch. 82, §215.)

The decisions above referred to are as follows: *Long v. The State,* 56 Ind. 182; same case, 26 Am. Rep. 19; *Hatch v. The State,* 8 Tex. Ct. of App. 416; same case, 34 Am. Rep. 751; *Commonwealth v. Scott,* 123 Mass. 239; same case, 25 Am. Rep. 87; *Austin v. The People,* 102 Ill. 261; *The People v. Tyler,* 36 Cal. 522; *The State v. Graham,* (decided by the supreme court of Iowa, October 19, 1883,) 17 N. W. Rep. 192.

.It must be remembered that this statement of the county attorney was not provoked or called forth by anything said by the defendant or his counsel; nor was it said incidentally in some argument addressed to the court; but it was said in an argument addressed to the jury, and in an argument upon the merits of the case, and for the purpose of influencing the jury and obtaining from them a verdict that the defendant was guilty of the offense charged. In all probability, this statement was made innocently and inadvertently by the county attorney, as he had been acting in that capacity only a very short time, and this was among the first cases prosecuted by him. But still, the rights of the defendant cannot be ignored or overlooked for that reason; nor can the principle be tolerated that convictions for violated law may be procured or brought about by the inauguration and accomplishment of other violations of law. It is also true that in this case the court below instructed the jury that the statement made by the county attorney should not be allowed to work any prejudice to the rights or interests of the defendant. But, under the authorities, the evil done by such an infringement of the law — an infringement of law by the prosecuting officer of the state — cannot be remedied or cured by any mere instruction from the court. The only complete remedy, if the defendant is convicted, is to grant him a new trial on his motion. Of course, if he does not want the new trial, or does not make a motion therefor, he should be sentenced.

The defendants also claim that the case was tried in the court below upon an erroneous theory. The defendants asked the court to give several instructions to the jury, embodying, in

substance, the proposition that if the said supposed libelous article was circulated only among the voters of Chase county, and for the purpose of giving them truthful information concerning the character of C. H. Carswell, who was then a candidate for the office of county attorney, and merely for the purpose of enabling such voters to vote intelligently upon the question as to who was the most suitable person to fill such office, and the same was circulated in good faith and for no bad purpose, then that the defendants should be acquitted. One of said instructions reads as follows:

"1. It is proper, justifiable, and considered in law privileged, for any voter to discuss publicly, in writing or orally, the qualifications, attainments, character and acts of any person who offers himself as a candidate for a public office, and who as such candidate solicits the votes of voters for such office. But such discussion must be for the purpose of ascertaining the truth in relation to such candidate, that an intelligent ballot may be cast for or against such candidate, and must be confined to such purpose and within reasonable limits; and if such discussion shall be actuated by malice, or for the purpose of injuring such person, it cannot be considered justifiable or privileged."

The court refused to give each and all of the instructions asked for by the defendants, and in lieu of the instructions asked for by the defendants gave the following instructions:

"But it is proper at this point to instruct you that the general rule that the law presumes malice from the fact of the publication of libelous matter, unless truth and good motives are shown, is subject to some exceptions.

"The law recognizes under certain peculiar circumstances what are termed privileged communications, that is, certain communications which in their nature and circumstances are such, that although containing defamatory matter, they are held in their general tendency to be beneficial rather than hurtful, if made honestly, and with a view to the public welfare or advantage, and for that reason the rule is relaxed as to the inference of malice from the fact of publication.

"Somewhat of this nature are fair and pertinent criticisms on the qualifications of candidates for office, addressed to the electors whose votes the candidates ask.

"The true test in such cases is the good faith and honesty

of the publication.   Was it made for the public benefit, or
was the occasion simply a cloak to cover malice?

"Malice in such cases need not be hatred or ill-will, but
any reckless or wanton disposition to do a wrongful act with-
out excuse or justification."

Prior to the giving of the foregoing instructions, the court
had given all necessary instructions with reference to the
general law of libel, and the law of this case, except that it
had not given any instructions with reference to privileged
communications or conditionally privileged communications.
These prior instructions, without the modifications contained
in these subsequent instructions, would have required the
jury to find the defendants guilty.   They were in substance,
that if the supposed libelous matter contained in said circular
was defamatory and untrue, malice should be presumed and
the defendants found guilty, notwithstanding the fact that the
publication thereof might have been in good faith, and the
defendants might have believed the same to be true.   And
the subsequent instructions above quoted relating to privi-
leged communications were given as modifications, explana-
tions, limitations or exceptions to the rule of law previously
enunciated.   The court itself seems to call them "exceptions."

It is difficult to say that the instructions of the court be-
low are erroneous; and yet that portion of the instructions
relating to privileged communications is so vague and indefi-
nite as possibly to render the entire instructions, taken as a
whole, misleading, delusive, and erroneous.   The court does
not say that any communications may ever be so privileged
as to overturn the rule of presumptive malice, or to render
such rule inapplicable or not relevant under the facts of the
case; but the court simply says, that in some cases, and under
"peculiar circumstances," "the rule is relaxed."   Neither
does the court say in express terms that the communications
might under any circumstances be so privileged as to author-
ize an acquittal of the defendants.   Something of this kind,
we think ought to have been said.   The instructions with re-
gard to constructive, or presumptive malice, required it; and
the instructions with reference to privileged communications

should have been made more explicit and definite than they were.

If the supposed libelous article was circulated only among the voters of Chase county, and only for the purpose of giving what the defendants believed to be truthful information, and only for the purpose of enabling such voters to cast their ballots more intelligently, and the whole thing was done in good faith, we think the article was privileged and the defendants should have been acquitted, although the principal matters contained in the article were untrue in fact and derogatory to the character of the prosecuting witness. (Townshend on Slander and Libel, §§ 241, 243, 244, 247, 209; 2 Wharton's Crim. Law, 8th ed., § 1636; 1 Russell on Crimes, 244, 245; *Commonwealth v. Clapp*, 4 Mass. 163; *Sweeney v. Baker*, 13 W. Va. 160, 183; same case, 31 Am. Rep. 758, 759; *White v. Nicholls*, 44 U. S. 266; *Brow v. Hathaway*, 95 Mass. 239; *Lewis v. Chapman*, 16 N. Y. 369; *Klinck v. Colby*, 46 id. 427; note to *Munster v. Lamb*, 23 Am. Law Reg., N. S., 22, *et seq.; Briggs v. Garrett*, 18 Cent. Law Jour. 109, and note, page 112.)

Generally, we think a person may in good faith publish whatever he may honestly believe to be true, and essential to the protection of his own interests or the interests of the person or persons to whom he makes the publication, without committing any public offense, although what he publishes may in fact not be true and may be injurious to the character of others. And we further think that every voter is interested in electing to office none but persons of good moral character, and such only as are reasonably qualified to perform the duties of the office. This applies with great force to the election of county attorneys.

With the view that we have taken of the questions already discussed, it is not necessary to discuss any of the other questions raised in this case.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.