THE STATE OF KANSAS v. WALTER S. WAIT.

1. LIBEL — *Publication in Saline County Shown.* A newspaper containing an alleged libelous article was published in Lincoln county; but, *held,* that sufficient evidence was introduced to sustain a finding by the jury that the newspaper and the alleged libelous article were also published in Saline county.

2. ARTICLE, *Prima Facie Libelous — Express Malice — Burden of Proof — Complete Defense.* An article published in a newspaper concerning an attorney at law, which would tend to injure his character and reputation as an honest and honorable attorney at law and citizen, would, like any similarly injurious article published against any other person, be *prima facie* libelous; and the fact that it had some connection with judicial proceedings, though not a report of any portion thereof, would not render it privileged or conditionally privileged. Nor would the burden in a criminal prosecution founded thereon against the publisher for libel be devolved upon the state to prove express malice, but malice would be presumed, and nothing would be a complete defense to the action except a showing that the alleged defamatory matter was true in fact, and published for justifiable ends; and such a showing would, under the constitution and statutes of Kansas, be a complete defense; and in such a case the supposed libelous matter would not be libelous.

3. LIBEL *Against Attorney — Bribing Jury — Error in Excluding Evidence.* A part of the alleged libelous article was that the person alleged to be libeled, who was an attorney at law assisting in the defense in a criminal prosecution for murder, had at the time no possible hope of being able to clear his client with a fair jury, but his only hope lay in a packed jury, and that his manner of conducting the trial showed that he relied upon hanging the jury by a "fixed man," or in other words by a bribed juror, and evidence was introduced tending to prove these matters; and the defendant in the libel

case, then, for the purpose of showing that one of the jurors was "fixed" or bribed, and that he did in fact hang the jury in the murder case, offered to introduce other evidence to show the conduct of this juror in the jury-room while the jury were deliberating upon their verdict in the murder case, and what he then and there said and did, and what he omitted to say and do, and how he voted, and how the other members of the jury voted, and that in fact he did hang the jury, but the court excluded all this evidence: *held*, error.

4. JUSTIFICATION—*Extent of Proof.* In a criminal prosecution for libel where the defendant justifies upon the ground that the alleged libelous matter was and is true, and was published for justifiable ends, it is necessary for him to prove or in some manner to show only its substantial truth, and that it was published for justifiable ends, and it is not necessary for him to prove or show the truth of any of the alleged libelous matter except such as would in fact be libelous if not true; and it is not necessary for him to prove or show the truth of even that portion of the alleged libelous matter by a preponderance of the evidence, but only by evidence sufficient to create a reasonable doubt in the minds of the jury. His proof, however, should extend to all the alleged libelous matters that would in fact be libelous if not true.

5. EVIDENCE—*Erroneous Admission.* In a criminal prosecution for libel, where the court permitted the counsel for the state in his closing argument to read to the jury from an opinion published in the supreme court reports, statements with regard to certain matters in another criminal case as evidence of certain facts in the libel case, *held*, error.

*Appeal from Saline District Court.*

PROSECUTION for libel. Trial at the October term, 1889, and judgment for *The State.* The defendant *Wait* comes to this court. The facts, so far as they are material, are stated in the opinion.

*Garver & Bond, Lovitt & Norris,* and *C. B. Daughters,* for appellant.

*L. B. Kellogg,* attorney general, *E. W. Blair,* county attorney, for The State; *Chas. A. Hiller,* of counsel.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal prosecution commenced in the district court of Saline county, in which it was

charged upon information that the defendant, Walter S. Wait, published in the *Lincoln Beacon*, a weekly newspaper published in the city of Lincoln, in Lincoln county, and having a circulation in Saline county, a libelous article concerning J. G. Mohler, the prosecuting witness. A trial was had before the court and a jury, and the defendant was found guilty and sentenced to pay a fine of $10, and the costs of suit taxed at $723.25; and from this sentence the defendant appeals to this court.

It appears that on January 3, 1888, in Lincoln county, Patrick Cleary shot and killed Jesse Turner; that afterward he was charged with murder in the first degree, and tried therefor and convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for the term of twenty years; that the sentence was afterward reversed by the supreme court, and a new trial granted, (*The State v. Cleary*, 40 Kas. 287;) that on May 16, 1889, and succeeding days, he was again tried in the district court of Lincoln county for murder; that during such trial J. G. Mohler, an attorney at law residing in Saline county, assisted in the defense; that on May 29, 1889, the jury retired to deliberate upon their verdict, but failing to agree, they were discharged on June 1, 1889; that on June 3, 1889, Cleary was taken by a mob in Lincoln county, and hung until he was dead; that on June 13, 1889, the present defendant, Walter S. Wait, published in a weekly newspaper edited and published by him in Lincoln county, and known as the *Lincoln Beacon*, an article which reads as follows:

"Sentimentalists cannot arouse sympathy for Pat Cleary by appealing to the heart, or saying that the murder was committed in self-defense. Pat was a murderer on at least three occasions; was a highway robber plying his vocation from Salina to Denver, and ought to have been killed years ago. . . . Kansas people ought now to be convinced of the necessity of capital punishment. Men commit the most cold-blooded murders imaginable, and after spending thousands of dollars, a sentence of from three to twenty years is the result. We do not want the legislature abolished until after they pass a suitable law on this subject. . . . Senator Mohler is getting a great deal of free advertising these days. We will have to spring his name as a candidate for the senate; not against Ingalls, but against Burton, if this thing continues.—*Salina Daily Republican.*

"The number of people in Lincoln county who would have raised a finger to remove Pat Cleary had his attorney been content to have let him serve his first sentence of only twenty years, could have been counted on the fingers of one hand. That Pat Cleary is dead can be laid at the door of his attorney, J. G. Mohler, whose insatiate greed to secure not only the last dollar that Pat's family had, but the last penny his relatives and friends had, and also a $400 judgment covering what they might hereafter earn, must be satisfied. He had no possible hope of being able to clear Cleary with a fair jury. His only hope lay in a packed jury, and his manner of conducting the last trial showed that he relied upon hanging the jury by a 'fixed man.' His effort before the jury was so weak that it was noticed by nine out of ten who heard it. His whole effort was constituted of abuse of the witnesses and Mr. Downey, one of the attorneys for the state. The people felt that it was absolutely necessary that Pat Cleary should be where he could take the lives of no more men; and they would have been satisfied had he been imprisoned for even twenty years, for that would virtually have been a life-term. Society would then have been safe from depredations by him. But a mob could not imprison him. They had but one alternative, and Jerry Mohler forced that upon them. If he likes the advertising, he is welcome to it."

The newspaper in which this article was published also had a circulation in Saline county. On June 17, 1889, this present criminal prosecution was commenced in the district court of Saline county, J. G. Mohler being the prosecuting witness. Only that portion of the aforesaid article commencing with the words, "The number of people in Lincoln county," etc., and closing with the end of the article, is complained of. The case was tried in the manner and with the result aforesaid.

Section 11 of the bill of rights of the constitution, reads as follows:

"SEC. 11. The liberty of the press shall be inviolate; and all persons may freely speak, write or publish their sentiments on all subjects, being responsible for the abuse of such right; and in all civil or criminal actions for libel, the truth may be given in evidence to the jury, and if it shall appear that the alleged libelous matter was published for justifiable ends, the accused party shall be acquitted."

Sections 270, 272, and 275 of the act relating to crimes and punishments, (Gen. Stat. of 1889, ¶¶ 2444, 2446, 2449,) read as follows:

"SEC. 270. A libel is the malicious defamation of a person, and made public by any printing, writing, sign, picture, representation or effigy, tending to provoke him to wrath, or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse, or any malicious defamation, made public as aforesaid, designed to blacken and vilify the memory of one who is dead, and tending to scandalize or provoke his surviving relatives and friends."

"SEC. 272. In all prosecutions or indictments for libels, the truth thereof may be given in evidence to the jury, and if it appears to them that the matter as charged as libelous was true, and was published with good motives and for justifiable ends, the defendant shall be acquitted."

"SEC. 275. In all indictments or prosecutions for libel, the jury, after having received the direction of the court, shall have the right to determine at their discretion, the law and the fact."

That portion of § 272, above quoted, requiring the defendant, in order to make a good defense of justification, to prove that the alleged libelous matter was published "with good motives," has been held to be in violation of the constitution, and void. (*The State v. Verry*, 36 Kas. 416.)

It is claimed by the defendant that there was no proof of the publication of the aforesaid article in Saline county. The newspaper was published in Lincoln county, and the proof is

1. Libel—publication in Saline county shown.

meager of any publication or circulation thereof by the defendant, or at his instance, in Saline county. We think, however, the evidence was sufficient to go to the jury, and sufficient to sustain a finding by the jury that the article was published in Saline county.

The defendant also claims that the publication of the article belongs to a class which is privileged, or at least conditionally privileged. Now it is generally true that a newspaper publisher may without committing libel publish judicial proceedings, although such proceedings may contain false statements injurious to individual persons. In such a case he merely

publishes the proceedings as judicial proceedings, without giving the statements contained therein any credit on his own account, and without reference to whether such statements are true or false. And in such cases he need not publish the entire proceedings, or publish them *verbatim;* but he may publish merely their substance. But this he should do fairly and truthfully. He may also make comments upon the proceedings, but the comments should also be fair, and should be such only as the proceedings themselves, or as the proceedings and the *actual* extrinsic facts would fairly warrant. He cannot assume to be true extrinsic defamatory matters which are not true, nor can he assume to be true anything in the proceedings which is still controverted, or which has not yet been judicially determined. To the extent already mentioned, the publication and comments respecting judicial proceedings may go to all persons connected with such proceedings, to the judges or justices, to the jurors, witnesses, sheriffs, constables and bailiffs, and to the parties and their attorneys or counsel. There are also many other kinds of privileged publications or communications, and conditionally privileged publications or communications, including such as have reference to the official conduct of public officers, and to the qualifications and fitness of candidates for public office, etc.; but the matters published in the aforesaid article do not come within any of them. As to candidates for public office, see *The State v. Balch,* 31 Kas. 465. It is true that the matters published in the aforesaid article had some connection with judicial proceedings, but such matters were not the proceedings themselves, nor were they determined to be true by such proceedings. It is claimed that Mohler relied upon hanging the jury by a "fixed man." This "fixed man" was the juror J. P. Harman, who, it is claimed, was bribed. Now the fixing of this juror, and the procuring of a hung jury by means thereof, was no part of the judicial proceedings. Nor was the procuring of the last dollar that Pat Cleary's family had, and the last penny that his relatives and friends had, and the $400 judgment covering what they might subsequently earn, any

part of the judicial proceedings; neither was the hanging of Cleary, for which it is claimed that Mohler is responsible, any part of such proceedings. Now upon the theory that these matters as published in the aforesaid article are false, we think they are also libelous, and not privileged or conditionally privileged. (Weeks, Attorneys, §§ 137, *et seq.*; Odg., Lib. & Sl. 7, 29, 30, 99, 253, 254; Newell, Defam., Sl. & Lib., pp. 184–186, §§ 18–22; pp. 544–559, §§ 147–167; pp. 580, 581, §§ 19 to 21; Townsh., Sl. & Lib., §§ 230, 252; *Ludwig v. Cramer,* 53 Wis. 193; *Hetherington v. Sterry,* 28 Kas. 426.) It is claimed, however, that attorneys at law are to some extent public officers, and this for the reason that they are often spoken of as "officers of the court," and therefore it is inferred that false and defamatory matters may be published of and concerning them with impunity, provided of course that the publisher does so in good faith. Now an attorney at law is not, except in a very limited and remote sense, a public officer. His business or vocation is to him a private matter. It is the means by which he procures his livelihood, and with reference to it and to his good character and reputation he is treated just as other persons are treated with reference to their private business or vocation, and their character and reputation. He is treated in these respects just as a physician, or farmer, or artisan, or mechanic, would be treated. The authorities seem to universally sustain this view, and not a single authority, so far as we are informed, can be found that promulgates or enunciates any different doctrine.

It is also stated that the public is vitally concerned in knowing the truth with reference to the conduct of attorneys at law, and therefore it is inferred that a newspaper publisher may publish falsehoods of a defamatory character concerning attorneys at law with impunity, provided of course that the newspaper publisher does so in good faith. This is hardly the law. The authorities seem universally to lay down the doctrine that a newspaper publisher has no greater right to publish falsehoods of a defamatory character concerning attorneys at law, or concerning anyone else, than any other person has.

All are equally required to tell the truth. We have already stated that newspaper publishers have a right to publish judicial proceedings, and to make fair comments thereon; but when they resort to extrinsic matters, they should be sure that such extrinsic matters are not false and defamatory. Innocent persons should not be defamed by falsehoods, nor should the public be deceived by the same; each is entitled to demand that whatever is published should be the truth. The public is certainly interested in knowing the conduct of attorneys at law as well as of all other persons whose acts or conduct might in any manner affect the public, but the vital interest of the public in this respect is in knowing the *truth,* and not in being deceived by *falsehoods;* and the public interest is not fairly satisfied by the publication of falsehoods instead of the truth. The publication of falsehoods is like giving stones, or something worse, where bread is wanted. In our opinion an article published in a newspaper concerning an attorney at law which would tend to injure his character and reputation as an honest and honorable attorney at law, would, like any similarly injurious article published against any other person, be *prima facie* libelous; and the fact that it had some connection with judicial proceedings, though not a report of any portion thereof, would not render it privileged or conditionally privileged. Nor would the burden in a criminal prosecution founded thereon against the publisher for libel be devolved upon the state to prove express malice, but malice would be presumed, and nothing would be a complete defense to the action except a showing that the alleged defamatory matter was true in fact and published for justifiable ends, and such a showing would, under the constitution and statutes of Kansas, be a complete defense; and in such a case the supposed libelous matter would not be libelous.

2. Article, prima facie libelous— express malice —burden of proof—complete defense.

The defendant further claims that the court below erred in refusing to permit evidence to be introduced on the trial tending to show the conduct and actions in the jury-room of the juror J. P. Harman, who, it is claimed, was a "fixed man,"

or in other words, was bribed to prevent, and who did prevent, the jury from agreeing upon a verdict that Patrick Cleary was guilty of murder, or of any other offense charged against him.     That portion of the aforesaid newspaper article which had reference to this matter, with the innuendoes explaining the same, as set forth in the information in this case, reads as follows:

"He [meaning the said J. G. Mohler] had no possible hope of being able to clear Cleary [meaning the said Patrick Cleary], with a fair jury.  His [meaning the said J. G. Mohler's] only hope lay in a packed jury [meaning thereby, a jury composed of one or more persons unduly or dishonestly biased or prejudiced in favor of said Patrick Cleary], and his [meaning the said J. G. Mohler's] manner of conducting the last trial [meaning the trial aforesaid of said Patrick Cleary] showed that he [meaning the said J. G. Mohler] relied upon hanging the jury by a 'fixed man' [meaning that said J. G. Mohler, either by himself or others with his knowledge, did unlawfully bribe or induce a member of the jury on said trial, corruptly, not to agree to a verdict of guilty against the said Patrick Cleary on said charge of murder in the first degree, and relied as his defense of his said client Patrick Cleary, on said trial upon a jury composed of one or more persons unduly or dishonestly or corruptly biased or prejudiced in favor of said Patrick Cleary].  His [meaning the said J. G. Mohler's] effort before the jury [meaning the jury in the case aforesaid] was so weak that it was noticed by nine out of ten who heard it [meaning that the said J. G. Mohler did not labor all in his power as an advocate, attorney and counselor before the jury aforesaid and in the case aforesaid, and on the trial thereof, because that the said J. G. Mohler knew that one or more of said jury was unduly or dishonestly or corruptly biased or prejudiced or influenced in favor of said Patrick Cleary, or against rendering a verdict in said cause against said Patrick Cleary of guilty of any of the offenses of which he stood charged in said cause]."

Some evidence was introduced on the trial of this case tending to show that Mohler did rely upon some one hanging the jury in the Cleary case.   Other evidence was introduced tending to show that an improper effort was made, presumably by bribery, to procure some one to hang the jury in that case.

And evidence was also introduced tending to show that J. P. Harman, one of the jurors in that case, acted very strangely, to say the least. He refused to have his photograph taken along with the other jurors, and gave as a reason therefor that "there might be some hard feelings against the jurors by some people, and if they had their photographs, they could very easily hunt them out; and they would know the jurors and the jurors would not know them." And when a fellow-juror said to him during the trial that the judge was very strict, and did not intend that they should be tampered with, Harman said: "No, you might have an envelope slipped into your hand with a hundred-dollar bill in it." And although Harman upon his *voir dire*, while the jury were being im-paneled, qualified as a competent and an impartial juror, and one who knew nothing about the case, yet it was shown on the trial of this case that he was and had been a subscriber to the *Lincoln Beacon*, that gave a full report of the proceedings of the former trial. The defendant further attempted to show in this case what Harman said and did, and what he omitted to say and do, while the jury in the Cleary case were in their room deliberating upon their verdict, but the court refused to permit anything of the kind to be shown. It is claimed that all the jurors except Harman voted for convic-tion, and that Harman voted constantly for acquittal, and that he did in fact hang the jury. But the court refused to permit anything of the kind to be shown. The court refused to permit anything to be shown which occurred in the jury-room during the deliberation of the jury, although it was stated that what did occur in the jury-room had come to the knowledge of the defendant in this case before he published the alleged libelous article. The court excluded the forego-ing evidence upon the following ground, as stated by the court, to wit:

"If that kind of evidence is admissible, it would be neces-sary to recall to this court every witness who testified in that case, and to show whether or not he had reasons for taking

the position he did upon the jury. I do not believe that evidence ought to be admitted."

It will be noticed that the evidence was not excluded because no sufficient foundation for its introduction had been laid, but because its introduction would involve the calling as witnesses all the witnesses who had previously testified in the Cleary case. Now we do not think that the introduction of this kind of evidence would necessarily or even probably involve any such consequences; but even if it would, it would hardly be a sufficient reason for its exclusion. In proving

3. Libel against attorney— bribing jury— error in excluding evidence.

Harman's conduct in the jury-room, only so much of it could be proved as might tend to show that he was a "fixed man," or in other words, to show that he had been bribed or tampered with, and this might not have required the calling of a single witness who had previously testified in the Cleary case. We think the evidence should have been admitted.

The defendant claims that the court erred in giving a certain instruction to the jury, wherein the court said: "But the truth so shown must be as broad as the libelous publication, and the proof of one of these matters alone does not constitute a defense in such a case." This, however, was modified by another instruction given to the jury, wherein the court stated that the defendant must be found guilty, "unless you further find that said article was substantially true, and was published for justifiable ends; but if you find that it was both substantially true and published for justifiable ends, then you should acquit the defendant." And the court also gave full instructions with respect to "reasonable doubts." Taking all these instructions together, we think no material error was committed, nor was the jury probably misled. As to the first of the above instructions, see Newell on Defamation, Slander and Libel, p. 796, § 45; as to the second, see the case of *The State v. Verry*, 36 Kas. 416. Where the defendant in a criminal prosecution for libel justifies upon the ground that the alleged libelous matter was and is true, and was published

for justifiable ends, he is required to prove, or in some man-
ner to show only its substantial truth, and that it
was published for justifiable ends; and he is not
required to prove or show the truth of any of the
alleged libelous matter except such as would in fact be libelous
if not true; and he is not required to prove or show the truth
of even that portion of the alleged libelous matter by a pre-
ponderance of the evidence, but only by evidence sufficient to
create a reasonable doubt in the minds of the jury. His
proof, however, should extend to all the alleged libelous mat-
ters that would in fact be libelous if not true, and in this
sense the proof should be "as broad as the libelous publica-
tion." In this state in every criminal action it devolves upon
the state to prove beyond a reasonable doubt every fact, in-
gredient or element necessary to constitute the offense charged.
(Crim. Code, § 228; *The State v. Crawford*, 11 Kas. 32, 42,
*et seq.; The State v. Child*, 40 id. 482.) It may be different
with respect to such defenses as admit in effect that the offense
charged may have been originally committed, as, once in jeop-
ardy, a former acquittal, a former conviction, or a pardon.
These are affirmative defenses that admit substantially that
the offense charged may have once been committed, and are
not negative defenses included in the general plea of "not
guilty," which in substance denies that the offense charged
was ever committed. If the alleged libelous matter was true
and published for justifiable ends, then no offense was ever
committed; and if upon the whole of the evidence introduced,
with all the relevant legal presumptions, the jury cannot say
that they are convinced beyond a reasonable doubt that the
alleged libelous matter was not true, or was not published for
justifiable ends, the defendant should be acquitted.

The defendant further complains of the following matters,
that occurred in the closing argument of counsel for the state,
to wit:

"In the closing argument upon the part of the state, J. R.
Burton, after referring to the position taken by defendant and
his counsel that the juror Harman had been bribed, and that

*4. Justification—extent of proof.*

Pat Cleary was a murderer, he said: 'The supreme court takes a different view from what they do as to Cleary's guilt,' and thereupon, taking up the 40th volume of the Kansas Reports, and turning to the case of *The State v. Cleary*, that he would read what the supreme court said as to the guilt or innocence of Cleary.

"Thereupon counsel for defendant interrupted Mr. Burton in his argument, and objected to the court to counsel's reading from the report of the case which he had just referred to; the court overruled said objection, remarking that 'counsel for defendant had been allowed great latitude in presenting the case to the jury.' To which ruling defendant excepted.

"Thereupon said J. R. Burton read from the decision of the court in the case referred to above, on page 299, as follows:

"'We are loth to express an opinion upon the merits of this case, but we are compelled by an unavoidable necessity to say, that the evidence preserved in this record does not so strongly impress us with the guilt of the defendant as to incline us to the opinion that the substantial rights of the defendant have not been invaded by this erroneous ruling. On the contrary, we think as the case is one of fact entirely, and grave doubts may be fairly entertained, that the district court should have given the defendant the benefit of the doubt and sustained the motion for a new trial, for the reason that the jury was not fairly constituted.'

"Counsel stated to the jury that that was the language of the decision of the supreme court upon the evidence in that case.

"Thereafter, and in another part of this argument, said J. R. Burton read from the alleged libelous article: 'He had no hope of being able to clear Cleary with a fair jury,' again took in his hands said report of the case of *The State v. Cleary*, and said to the jury, 'The supreme court says that he has.'

"And again, in another part of his argument, said J. R. Burton again referred to said report and said expression of opinion in said report of said case, and said to the jury, 'Cleary may have been guilty, or there may have been a grave doubt, as the supreme court says there was.'"

The views or supposed views of the supreme court referred to by counsel for the state in the closing argument, are found in the opinion prepared by one of the commissioners of the supreme court in the case of *The State v. Cleary*, 40 Kas. 288, *et seq.* These views, however, have nothing to do with the *law* of the present case; nor indeed with *any law*. They are

really only an expression of opinion with regard to the facts of the Cleary case, as deduced from the evidence introduced on the first trial of that case. This report of the views of the supreme court was not introduced in evidence in the present case except by counsel for the state in his closing argument. And it was then introduced for the purpose of rebutting any opinion that might be deduced from the evidence in this case, or be entertained "that the juror Harman had been bribed;" or "that Pat Cleary was a murderer," or that Mohler "had no hope of being able to clear Cleary with a fair jury." It was an attempt to make the supreme court testify in the present case with regard to some of the facts of the Cleary case supposed to be involved in the present case. And it was new evidence not introduced on the trial of the present case, nor in the case at any time prior to the closing argument of counsel for the state, and it could not properly have been introduced at all. We think the court committed error when it permitted this to be done. Some of the decisions which have some application to this question are as follows: *Huckell v. McCoy,* 38 Kas. 53, 59, and cases there cited; *Wolffe v. Minnis,* 74 Ala. 386; *Bulloch v. Smith,* 15 Ga. 395; *Dickerson v. Burke,* 25 id. 225; *Forsythe v. Cothran,* 61 id. 278; *Tucker v. Henniker,* 41 N.H. 317; *Bullard v. B. & M. Rld. Co.,* (N.H.) 5 Atl. Rep. 838, 844, and note; *B. & O. Rld. Co. v. Boyd,* (Md.) 10 Atl. Rep. 315; *Hall v. Wolff,* 61 Iowa, 559; *Henry v. S. C. & Pac. Rld. Co.,* (Iowa) 30 N.W. Rep. 630, 632, and note; *Ricketts v. C. & O. Rly. Co.,* (W.Va.) 19 S.E. Rep. 801; *Coble v. Coble,* 79 N.C. 589; *Paper Co. v. Banks,* 15 Neb. 20; *C. & A. Rld. Co. v. Bragonier,* 13 Brad. (Ill.) 467; *Kinnaman v. Kinnaman,* 71 Ind. 417; *Rudolph v. Laddwerlin,* 92 id. 34; *Town of Rochester v. Shaw,* 100 id. 268; *Campbell v. Maher,* 105 id. 383; *Hoxie v. Home Ins. Co.,* 33 Conn. 471; *Bedford v. Penny,* 58 Mich. 424; *Rickabus v. Gott,* (Mich.) 16 N.W. Rep. 384; *H. & T. C. Rld. Co. v. Nichols,* (Tex.) 9 Am. and Eng. Rld. Cases, 361; *Willis v. McNeill,* 57 Tex. 465; *G. H. & H. Rld. Co. v. Cooper,* 70 id. 67; *G. H. & S. A. Rld. Co. v. Kutac,* (Tex.) 37 Am. and Eng.

5. Evidence— erroneous admission.

Rld. Cases, 470; same case, 11 S. W. Rep. 127; *Insurance Co. v. Cheever*, 36 Ohio St. 201; *Brown v. Swineford*, 44 Wis. 282; *Bremmer v. G. B. S. P. & N. Rld. Co.*, 61 id. 114; *Baker v. City of Madison*, 62 id. 137; *Koelges v. Ins. Co.*, 57 N. Y. 638; *The State v. Balch*, 31 Kas. 465.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

JOHNSTON, J., concurring.

HORTON, C. J.: I fully concur in the reversal of the judgment of the district court; but I am not satisfied with all that is stated in the opinion. I do not agree with all the limitations placed on the publication of judicial proceedings or matters directly connected therewith. I think that every newspaper has a right to comment on matters of public concern, provided it is done fairly and honestly. I do not think that such comments are libelous, however severe in their terms, unless they are written and published maliciously. I think the administration of the law, the verdicts of juries, the conduct of suitors, their lawyers and witnesses, are all matters of lawful comment by newspapers as soon as the trial is over.

Attorneys at law are officers of the court in which they practice, and are admitted by its order, upon evidence of their possession of sufficient legal learning and good moral character; they hold their office during good behavior, and can only be deprived of it for misconduct. Therefore any attorney can be protected from libel for anything occurring upon a trial, or for any matter connected directly therewith, to the same extent as any other officer of the court. That, and nothing more.

Of course, if a publisher of a newspaper writes and publishes maliciously any false or libelous matter against an attorney, or any other officer of a court, there is no danger but that the publisher may be properly punished, even if express malice must be proved. The jury have the authority to take all the matters into consideration, and if express malice is established, or if malice is found from the circumstances attend-

ing the publication, the jury will be justified in rendering a verdict of guilty. When it is said that malice must be shown in the case of privileged communications, the term "malice" is used in its legal, not in its popular sense. It is legal malice, if one publishes as true what he knows to be false, or what by proper investigation he might have assured himself was false.

The case of *The State v. Cleary* was a public trial; the state and the people of the state were greatly interested in its result. If justice miscarried from the act or conduct of any officer of the court during the trial, it was a subject of legitimate newspaper comment. The jury could determine, under the facts and circumstances of this case, whether the comments of the newspaper were made from good or honest motives, upon reasonable grounds, or whether they were maliciously written and published. If the defendant in referring to the trial, or any matters directly connected with the trial, acted solely from good and honest motives, and upon reasonable grounds, he ought not, in my opinion, to be criminally liable.