| 38 | 53 |
| 44 | 323 |
| 44 | 408 |
| 38 | 53 |
| 57 | 547 |
| 38 | 53 |
| f81 | 850 |

## WILLIAM HUCKELL v. J. C. McCOY.

1. REPLEVIN — *Jurisdiction* — *Damages.*  Where an action of replevin is commenced before a justice of the peace by a resident of the county against a non-resident, and the defendant is properly served with summons in the county where the action is commenced, but the property is not obtained, and the property has never been wrongfully detained in the county where the action is commenced, but has been and is wrongfully detained by the defendant in the county where the defendant resides, the court has jurisdiction to hear and determine the case as one for damages only.

2. JURY — *Improper Remarks of Counsel* — *New Trial.*  Where counsel for the plaintiff in his closing argument to the jury repeatedly makes improper remarks, prejudicial to the interests of the adverse party, and such remarks are permitted to go to the jury over the objections of the adverse party, and the verdict is afterward rendered in favor of the plaintiff, and may have been procured by reason of such remarks, a new trial should be granted.

*Error from Mitchell District Court.*

ACTION by *McCoy* against *Huckell*, to recover three hogs. Judgment for the plaintiff was rendered in the district court on July 24, 1885. The defendant brings the case here. The material facts are stated in the opinion.

*Ellis & Ellis*, for plaintiff in error.

*Kelley & Thorp*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin, brought by J. C. McCoy against William Huckell, before a justice of the peace of Cawker township, Mitchell county, to recover three head of swine. The case was tried before the justice without a jury, and judgment was rendered in favor of the plaintiff, McCoy, for one of the hogs in controversy, and in favor of the defendant, Huckell, for the other two hogs. The defendant appealed to the district court, where the case was again tried before the court and a jury, and judgment was rendered in favor of the plaintiff, and against the defendant for $30 damages and the costs of suit. To reverse this judgment the defendant, as plaintiff in error, brings the case to this court.

Two principal grounds are urged for reversal: First, that the court below had no jurisdiction to hear and determine the case; second, misconduct on the part of the prevailing party. We shall consider these grounds for reversal in their order:

I. We think the court below had jurisdiction to hear and determine the case. The exact question, however, which the plaintiff in error, defendant below, desires to present to this court, can hardly be considered as in the case; for it was not raised at all in the justice's court, nor fairly raised in the district court, nor raised in the supreme court, until it was presented to the court by the brief of the plaintiff in error. That question is this: When an action of replevin is commenced

before a justice of the peace by a resident of the county, against a non-resident, and the defendant is properly served with summons in the county where the action is commenced, but the property is not obtained, and the property has never been wrongfully detained in the county where the action is commenced, but has been and is wrongfully detained by the defendant in the county where the defendant resides, has the court jurisdiction to hear and determine the case as one for damages only? The facts upon which this question is desired to be raised are as follows: Huckell resides in Jewell county, and if he ever had any of McCoy's hogs in his possession, he had them in his possession only in Jewell county. McCoy resides in Mitchell county, and he commenced this action in that county. The summons was served upon Huckell in Mitchell county, but the officer never obtained possession of the hogs. The case was tried before the justice of the peace, and no question of jurisdiction was raised in that court. The case was appealed by the defendant to the district court, where it was tried as an action for damages only. It is not claimed that any question of jurisdiction was raised in the district court, until the defendant below filed his demurrer to the plaintiff's evidence, and it is now claimed that by such demurrer the question was raised. The demurrer, however, was in the following words: "And now comes the said defendant, William Huckell, and demurs to the evidence of the said plaintiff, for the reason that said evidence does not prove a cause of action." We do not think that this demurrer raises any question of jurisdiction. Neither does the exception taken to the ruling of the court upon this demurrer, nor the motion for a new trial, nor the exception to the ruling thereon, nor any exception, nor does the petition in error, present the question. Under such circumstances, we think the district court certainly did not err in entertaining jurisdiction of the case. But even if the defendant below had properly raised the question of jurisdiction in the justice's court, still we think it would have been unavailing; for we think the justice of the peace had ample jurisdiction to hear and determine the case as one

for damages only, over any objection interposed by the defendant below. (Justices Code, § 67.)

II. The alleged misconduct of the prevailing party is the alleged misconduct of the counsel of the plaintiff below in making statements of alleged facts to the jury in his closing argument, which alleged facts had no connection with the case, were not supported by any evidence, and were highly prejudicial to the rights of the defendant. The statements were principally that the defendant had a very bad reputation, that he was continually in litigation, and that he was a liar and a thief. Among the statements are the following:

"I do not know what Mr. Ellis [the defendant's counsel] meant by his statement in regard to a 'good man,' unless the public clamor has been so loud about the bad reputation of his client that you have heard it."

"Afraid of a prosecution! from whom? A man who, when he knows more than anyone else—who of all men knows whether those hogs were stolen or not—dares not become a witness. A thief seldom exposes his work to the noonday sun."

"If he [meaning the defendant] had come on the stand, we would have shown you that he [meaning the defendant] would swear to a lie—that he is a liar as well as a thief."

"Mr. Ellis says that the boy has never been on the stand before. He probably don't know what everybody else knows, what all the neighbors know, that Huckell is all the time in court—always having a lawsuit."

The defendant was not a witness in the case, and was not impeached. There was no evidence tending to show that he had a bad reputation; no evidence tending to show that he was "always" or had been at any time in litigation; no evidence tending to show that he was either a liar or a thief; no evidence that he stole the particular hogs in controversy, or that he had ever stolen anything; and no evidence indeed that the hogs in controversy were ever stolen by anybody, except evidence tending to show that they were at one time in an inclosure on the plaintiff's farm, and were afterward found in an inclosure on the defendant's farm. It appears from the evidence that the plaintiff had about 127 hogs on

his farm; that the defendant had about 200 hogs on his farm; that their farms were near each other; that sometime in March or April, 1885, about eleven of the plaintiff's hogs were missing; that sometime afterward the plaintiff went to the defendant's farm, looked at the defendant's hogs, and found, as he believed, three of his own among the defendant's hogs; that he then demanded these three hogs of the defendant; but that the defendant refused to deliver them to him, claiming that they were his own. The plaintiff then commenced this action to recover the hogs. The evidence upon the trial was very conflicting as to which of the parties owned the hogs. Some of the witnesses testified that they belonged to the plaintiff, and others testified that they belonged to the defendant. After the evidence was all introduced, and prior to the argument of counsel, the defendant's attorney asked, and the court consented, to submit two special questions of fact to the jury, for the purpose of having the jury determine as to how the hogs in controversy came into the possession of the defendant; whereupon the counsel for the plaintiff objected, and said: "I admit that if I have not proven a demand in this case the plaintiff is not entitled to recover in the action." And thereupon the court refused to submit said questions to the jury, and struck out from its general charge all matters intended to have been given, upon the possible theory that the defendant's possession of the hogs prior to the plaintiff's demand for them might have wrongful or unlawful. This action on the part of the plaintiff's counsel and the court settled the question in favor of the defendant, that he did not wrongfully have the possession of the hogs prior to the plaintiff's demand for them, and therefore that the defendant did not steal them. The plaintiff's counsel then addressed the jury, and then the defendant's counsel, and then the plaintiff's counsel again. This was his closing argument, and the one in which he used the aforesaid language objected to. When the objection was made to the first paragraph of this language above quoted, nothing was said by either the court or the plaintiff's counsel except as follows:

"The court remarked that it had not paid attention, and

had not understood the words used, but the counsel should confine his remarks to the facts disclosed by the evidence, and that the jury should pay no attention to assertions of counsel unless they were supported by the evidence."

When the other three paragraphs were objected to, and they were objected to severally, nothing was said by either the court or the plaintiff's counsel. These objectionable matters were not withdrawn from the jury by either the court or the plaintiff's counsel. No retraction, no apology, no expression of regret, was elicited or came from the plaintiff's counsel, but he proceeded with his argument as though nothing had happened. After this argument of counsel, the jury retired to their room for deliberation, and on the first vote taken by them, seven were in favor of finding a verdict in favor of the defendant, and five only were in favor of finding a verdict in favor of the plaintiff. Then commenced a discussion among the members of the jury, and the principal question discussed by them was, whether the charges made by the plaintiff's counsel against the defendant were true, or not; and the jury, from their final verdict, evidently believed they were true. We might also here state that at the commencement of the trial the plaintiff had thirteen witnesses sworn, and afterward examined only three of them, and this left the jury to infer that the other ten were sworn for the purpose of impeaching the defendant if he testified in the case, and therefore that the third charge made by the plaintiff's counsel was true. Such language as was used in this case by the plaintiff's counsel might not ordinarily require a new trial, but in a case like the present we think it must. In all probability the plaintiff never would have obtained or received a verdict in his favor from this jury if the aforesaid language had not been used. Two of the jurors so testified, and there was no evidence tending to show otherwise; but of course this testimony was incompetent. We might also state another fact that tended very strongly to give the objectionable language force and efficacy : It is admitted that the plaintiff's counsel is a man of high character, of good standing as a lawyer, and well known.

We think the court below erred in refusing to grant the de-

fendant a new trial. Certainly where counsel in his closing argument to the jury repeatedly makes improper remarks, prejudicial to the interests of the adverse party, and over the objections of the adverse party, and the verdict is afterward rendered in favor of such counsel's client, and may have been procured by reason of such remarks, a new trial should be granted. (*Brown v. Swineford*, 44 Wis. 282; *Bremmer v. Green Bay Rld. Co.*, 61 id. 114; *Bullard v. B. & M. Rld. Co.*, [N. H.] 5 Atl. Rep. 838; *Cleveland Paper Co. v. Banks*, 15 Neb. 20; *Hall v. Wolff*, 61 Iowa, 559; *Henry v. S. C. & Pac. Rld. Co.*, [Iowa] 30 N. W. Rep. 630; *Campbell v. Maher*, 105 Ind. 383; *Bedford v. Penny*, 58 Mich. 424; *Insurance Co. v. Cheever*, 36 Ohio St. 201.)

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.