Shauck, J.
Counsel for the plaintiff in error insist that the trial court erredin admitting the testimony offered by the contestants to show the establishment and ultimate failure of a school on Foster’s Hill some thirty years before the execution of this will.
That attempt to establish and maintain a school under Swedenborgian auspices was so different as to the times and surroundings and the conditions affecting the success of the enterprise, that it could hardly have been received by the jury as showing an insane condition of mind in the testatrix at the time of the execution of this will. Rightly considered, it tended strongly to show the validity" of the will. The fact that the testratrix and her husband had for more than a quarter of a century been extending their means and exertions to the establishment and maintenance of a school under similar auspices, demonstrates the stability of the sympathies and purposes which find expression in this will. Such sympathies and purposes are thus shown to have existed in the mind oí the testatrix long before the occurrence of any of the facts which are urged as evidence of insanity. If the jury regarded this testimony as adverse to the validity of the will, it must have been because it was offered by the contestants and objected to by the proponents. Nor did the charge of the court upon the testimony mislead the jury as to the effect which it should have. The charge permitted the jury to consider it as one of the circumstances to show either the validity or invalidity of the will.
*330 Does the record show an abuse of the privilege of counsel? As an aid in answering that question, we have the tests applied by courts of high authority in similar cases. The rights and liabilities of the parties are to be determined from the law and the evidence. Counsel must not refer to matters not in evidence which are liable to influence the jury. Extracts may be used, but only for the purposes of illustration. They can never be used as statements of facts, nor as expressions of opinions, nor can they be used under color of illustration when they contain statements of fact or expressions of opinion concerning the case on trial or like cases, or which would naturally divert the attention of the jury from the questions which they ought to consider. Cleveland Paper Co. v. Banks, 15 Neb. 20; Tucker v. Henniker, 41 N. H. 318; Hall v. Wolfe, 61 Ia. 559 ; Huckel v. McCoy, 38 Kan. 53; Baldwin v. Bricker, 86 Ind. 221; Rudolph v. Landwerlein, 82 Ind. 34; Insurance Co. v. Cheever; 36 Ohio St. 201.
These tests do not call for nor admit of much nicety in their application. The record shows that before reading the extract from Maudsley, counsel for contestants declared that he did not do so to show Swedenborg’s insanity, but later said : “ Here is Dr. Maudsley who eulogizes his (Swedenborg’s) intellectual power, his acquirements, as much as does Mr. Emerson, and yet he declares him insane.”
The disclaimer of the intention to put Maudsley’s opinion in evidence was formal; counsel’s subsequent declaration that Maudsley thought Swedenborg insane, was substantial. That it was prejudicial to the proponents of the will, and intended to divert the attention of the jury from the questions they ought to have considered, are obvious from a brief consideration of the issues and the evidence.
The will devoted the property of the testatrix to the establishment and maintenance of a school in Glendale, to be conducted under the auspices of a religious denomination who acknowledged Swedenborg as their leader, and upon certain contingencies to the general uses of that denomination. The *331 evidence bad shown that until the week preceding her death, the testatrix, as far as her blindness would permit, had controlled her property, had transacted business, had always been regarded by heir neighbors as sane ; it had, in short, failed to establish general insanity; it had also failed to establish any delusion whioh affected her relations to any of those who would have inherited her property if she had died intestate. It was a necessity of the contestant’s case that they should show that t.he testatrix was subject to a delusion with respect to her devisee — that she was a victim of religious monomania.
With that point in view, it was improper to urge upon the jury the opinion of one who was introduced to them as “ the highest authority in the world on mental alienation;” that the leader of her religious faith, in so far as it was peculiar, was himself insane. The sanity of Swedenborg was not in issue in the case. If it had been, Maudsley’s book could not have been introduced by either party. This line of argument was pursued against the protest and objection of counsel for the proponents, and with the express sanction of the court. Considered in the light of the authorities cited, it was error, for which the judgment should be reversed.
In its charge the court said: “ Evidence has been offered tending to prove that the testatrix believed that she had communications with the spirit of her deceased husband. Such a belief does not of itself prove that she was of unsound mind ; but the fact that she had such belief as an item of evidence, which you can consider, etc.” It was not proper for tl.e court to assume that that was a fact which the evidence had only tended to establish; but the jury might have supplied the necessary condition viz: if the evidence established the fact. But it is fatal to this instruction that there was no such evidence. In this direction the only testimony was that she believed that the spirit of her deceased husband “ was present with her.” The law laid upon the trial judge no such hard duty as rehearsing the testimony which had occupied more *332 than a month in its introduction ; but when he undertook to do so, -it was indispensable that he should do it with substantial accuracy. Who shall say that in the domain of spiritual belief, a mis-statement of this character is not substantial? Those whose interpretations of the Scriptures lead them to believe that the spirits of the departed are among the living aré not to be confounded with those who believe in actual communication between the living and the spirits of the dead.
It is also urged that the court errred in overruling the ob- • jection made by counsel for plaintiff in error to the hypothetical case stated to Dr. Richardson, who had qualified as an expert alienist; and in the charge on the subject of the credit to be given to the opinion elicited from that witness. It is undoubtedly the law that a hypothetical question is incompetent if it assumes elements which no testimony tends to es- ' tablish. Williams v. Todd’s Executor, 28 Ohio St. 547.
One of the few important facts assumed in the hypothetical ■ case was that the person whose sanity was the subject of inquiry, believed that poison exuded from her skin. It is also true that the only testimony fixing the date of such belief definitely is that of Dr. Mussey/who fixes it at four months after the making of the will, and after the testatrix has been rendered unconscious by the disease of which she died a week later. But Mrs. Julia Allen testifies to hearing the testatrix express that belief, and while she is not able to fix the date ofthat conversation, her testimony does not exclude the possibility of its having been before the last illness. This fact, and others taken by the witness from the case stated to him, and presented by him as the real foundation of his opinion that the person described was insane, were not admitted to have been correctly assumed as to the condition of the testatrix at or near the time of making the will. On the contrary, there was much evidence to show that they were not correctly assumed. In this state of the evidence, the court charged, among other things, upon the subject of expert’s *333 opinion : “The value of that opinion is, therefore, increased or diminished in proportion as the supposed facts included in the hypothetical question tally with the facts proved in the ease.” Logically, if any facts which the evidence does not establish are assumed as a part of the foundation of the expert opinion, the opinion is of mo value for the purposes of the case. The theory upon which opinions of experts are admitted is, that the witnesses have knowledge not possessed by the jurors, which forms a foundation for safe conclusions in a particular case. As jurors are not suppos*d to have knowledge of the value of the several facts assumed as the basis of the opinion of the expert, they should not beset tospeculating what his opinion would have been if any fact which the evidence fails to establish had been omitted from the case. If it were otherwise, there would be no reason for the rule that a hypothetical question which assumes facts which the evidence does not tend to establish, is incompetent. The portion of the charge quoted refers to the facts assumed in the question put to the witness; while the expert’s testimony affirmatively shows that many of those facts were not recognized by him as indicative of either sanity or insanity. The jury should have been instructed that if they were of the opinion that any fact assumed by the witness, as the basis of his opinion, was not established by the evidence, they should regard his opinion as of no value, unless his testimony shows that such fact affected only the confidence with which the opinion was held.
While the instruction above quoted might have been intended to convey this meaning to the jury, it might have been understood by them as prescribing a law of mathematical proportion as the rule for ascertaining the value of the opinion, if all the facts were not established. There was nothing in the charge to prevent such misleading result.
It is also claimed that the court erred in overruling the motion for new trial upon the ground that the verdict was against the manifest weight of the evidence. This assignment of error presents the question of chief importance, since our judgment upon it must be final.
*334 It would be impracticable and unprofitable to review tbe large mass of this evidence in detail. It shows that the testatrix was about seventy-six years of age; that this will was made about four months before her death; that she and her husband, who died twenty months before her, had been for many years devotedly attached to the New Church ; that she was a diligent reader of the works of Swedenborg ; that both she and her husband had been interested in the establishment and maintenance of a school at Foster’s Hill, about two miles from Glendale, which had been started about thirty years before ; that she always regretted the failure of that school; that she had contributed largely to the support of her church in Glendale, and toward many enterprises in the interest of' the New Church and under its auspices; that she was blind, or nearly so, for the last four years of her life; that she had peculiarities of dress, of thought, of habits of living, and of religious views, and views as to the treatment of diseases; that tbe devised property had been left to her by the will of her husband, who had orally requested her to leave it at her death to the support of the interests of her church; that efforts were made to induce her to make a different disposition of ■ her property, which efforts she resented with some show of feeling; that neither she nor her husband had children ; that the estate, amounting to about fifty thousand dollars, was devised in this will to a trustee named therein for a school in Glendale, where religious instruction should be given .according to the doctrines and teachings of Emanuel Swedenborg, and with the further directions that if, after a fair trial, the trustee should find it impracticable to maintain the school, the property should be devoted to other designated uses of the New Jerusalem Church; that this will was substantially identical with one which she had executed a year before, a re-execution being thought necessary to correct mistakes in names and other minor matters; that none of the contestants were provided for in the former will; that they were brought to her attention, but she declined to make provision for them, *335 because they were sufficiently provided for, or were not needy, and because her husband had requested her to leave the property to the church; that shortly before her death she conveyed some property for less than its value to persons who had served the family long and faithfully, and with full appreciation that the conveyances were partly by way of a recognition of the fidelity of the grantees, and to make full the compensation which she believed to have been inadequate; that she died of chronic diabetes; that throughout her life she transacted business with the plaintiffs in this case and others; aud that she was treated uniformly by her neighbors, and regarded by them, as a person of sound mind.
The evidence offered by the contestants further tended to show that about twenty-five years before her death she had a delusion that a lady who spent a year in the family had attempted to poison her, and that about five years before her death she had a similar delusion concerning another person, and that she insanely believed that the poison exuded from her skin.
Much of the testimony offered by the contestants should be classed with that whieh Dr. Richardson thought indicative of nothing upon the question of sanity or insanity. It portrayed the individualities of a woman of more than ordinary intellectual power, devoted to her church, deeply interested in its peculiar literature, caring less than most women do for the style of her apparel; and it shows that these individualities, always marked, became more apparent as age came upon her.
The testimony as to the delusions concerning poisoning, has been presented for much more than -its true value. In this connection, we do not think it of the least importance that the women whom the testatrix is said to have suspected of attempts to poison her, were not inquired of when upon the stand whether they had made such attempts. The evidence did not show that such an attempt had been made. Rut we are not driven to the alternative presented by counsel, viz.: *336 that the testatrix was insane, or that these women were guilty of attempts to poison her. The evidence shows that insofar as the testatrix had the belief that such attempts had been made, she followed the suggestion of her husband, and drew a conclusion which the facts did not at all justify; but this did not prove an insane delusion. Verdicts founded on flimsy evidence do not show the insanity of the jurors by whom they are returned. And if we admit that concerning these women the testatrix had insane delusions, it does not follow that her will is invalid. They are in no sense affected by its provisions. They take nothing whether the will is valid- or void. The supposed delusions, if they existed, did not to any extent prompt the execution of the will, nor suggest any of its provisions.
The existence of delusions which in no way relate to those who are excluded from or embraced in the provisions of a will, are not at all inconsistent with testamentary capacity. Rice v. Rice, 53 Mich. 432; Hollinger v. Byrnes, 37 N. J. Eq. 221; Otto v. Doty, 61 Ia. 23; Smith’s will, 52 Wis. 543.
There was a substantial failure in the case presented by the contestants. They failed to show general insanity, or inability of the testatrix to recall the natural objects of her bounty, and to fully comprehend the transaction in which she was engaged when making her will; nor do they show any delusion affecting her relations to any of her heirs at law, or her devisee.
The opinion of Dr. Richardson that the case stated to him is of one who is mentally unsound, is shown by his own testimony to rest mainly upon the assumed facts of a diabetic condition and a delusion that poison exuded from the skin. Neither of these conditions was shown to be true of the testatrix at the time of making her will; much less was either of them true a year before when she executed the will, whose provisions were substantially identical with these.
The theory that the existence of an insane delusion indicates insanity may be right, and it may be helpful to those *337 who strive to heal mental disorders, but it cannot control in the judicial determination of the question whether this paper is the last will of Mrs. Allen, in view of the abundant evidence that it is.
Bateman & Harper, Reuben Tyler and E. W. Kittridge, for plaintiffs in error.

Ramsey, Maxwell & Ramsey, eontra.

The testimony shows affirmatively that the will in question was the natural product of the opinions, associations and affections of the testatrix. It was the result of a purpose long entertained by her and her husband.
We are not unmindful of the rule governing reviewing courts that consideration is to be given to the opinion of the jury and of the trial judge, as indicated by his refusal to set aside the verdict. That rule should control in all cases where the conclusions of fact are doubtful. It cannot excuse from the performance of the plain duty of the court to see that the law is faithfully administered. When there is a ■ failure in that regard, it cannot be important whether the court gave incorrect instructions to the jury, or refused to set aside a verdict which was returned in manifest disregard of correct instructions given.
In its charge in this case, the trial court stated with commendable force and clearness the true rules by which the jury were to be governed in this inquiry. When the motion for a new trial made the weight of the evidence a question for the court, it should have insisted that the rules stated should govern in the decision of the case.
For error as to the abuse of privilege by counsel, in the instructions given in the respects indicated, and in overruling the motion for a new trial on the ground that the verdict was against the manifest weight of the evidence, the judgment will be reversed.
Swing, J., does not concur in all the views here expressed.