B. F. SURFACE, *as Administrator of the estate of Samuel B. Douglas, deceased,* v. SARAH E. DOUGLAS.

ARGUMENT TO JURY— *Going Outside of Case — Judgment, Reversed.* Counsel, in his argument to the jury, should confine himself in his remarks and statements of fact to the matters in evidence; and if, in his closing argument, he travels outside of the case, and, over the objection of opposing counsel, assert to be facts matters not in evidence, which are prejudicial to the interests of the adverse party and which would have a tendency to divert the minds of the jury from the real issues in the case, and such statements may have been the controlling influence in arriving at the verdict which was rendered, the interests of justice require that the verdict returned in his client's favor should be set aside on account thereof; and where an appellate court cannot say, as a matter of law, that, had the verdict been rendered in favor of the adverse party, the judgment should be reversed, such fact will have great weight in determining the effect produced by such improper remarks upon the minds of the jury in arriving at a verdict.

MEMORANDUM.— Error from Republic district court; F. W. STURGES, judge. B. F. Surface, as administrator, appealed to the district court from an order of the probate court on submission of final report, and brings error from a judgment on the application of Sarah E. Douglas for trial of questions of fact as to the performance of the duties as administrator. Reversed. The facts fully appear in the opinion, filed July 6, 1895.

*Noble & Surface,* for plaintiff in error.
*W. T. Dillon,* for defendant in error.

The opinion of the court was delivered by

CLARK, J.: At the October term, 1890, of the probate court of Republic county, the plaintiff in error submitted his final report, and asked for his discharge.

In the report submitted by the administrator, he asked credit for $563.50, the same being the amount of purchases made by J. M. Jones and James Eyer at the administrator's sale of the personal property belonging to the estate. The widow of the intestate filed written objections to such allowance, and from the examination that was had in the probate court, the court refused to allow the credit claimed, and charged the administrator at such final settlement with the amount of the sale bill, and ordered a distribution of the estate, including the amount for which plaintiff in error asked credit in his final settlement. The statutes of this state provide that in all sales of personal property by an administrator a credit may be given of not less than three and not more than nine months, when the amount purchased exceeds $5; that notes or bonds with one or more approved sureties shall, in all such cases, be taken by the administrator; that the administrator shall be chargeable with the amount of the sale bill, but shall not be responsible for any loss happening by the insolvency of any purchaser at the administrator's sale or his sureties, if satisfactory evidence is adduced that the administrator proceeded with due caution in taking surety, and has used due diligence to collect said notes and bonds. (Gen. Stat. of 1889, ch. 37, §§ 72–74, 152.) From the said order of the probate court the plaintiff in error appealed to the district court of Republic county, where, upon the application of the widow and the minor heirs of the estate, the court submitted to the jury the question of fact as to whether or not the administrator, the plaintiff in error in this case, proceeded with due caution in taking the Jones and Eyer notes and security thereon, and used due diligence in endeavoring to collect the same. The jury returned

the following verdict: "We, the jury, impaneled and sworn in the above-entitled case, do, upon our oath, find that Mr. Surface, the administrator, did not use due caution in taking said notes with surety and due diligence in endeavoring to collect the same." A motion for a new trial was promptly filed by the administrator, alleging, among other things, misconduct of the plaintiff and of the jury by which the defendant was prevented from having a fair trial. The motion for a new trial was overruled, and judgment rendered confirming the order of the probate court. The ruling and judgment of the court were excepted to, and are assigned as error in this court.

The only issue involved in the trial below was as to whether or not the plaintiff in error proceeded with due caution in taking surety and used due diligence to collect the Jones and Eyer notes, and all the evidence that was offered or introduced at the trial bore solely upon that question. The evidence was conflicting, and the jury found against the administrator. The record also discloses that after the cause was submitted to the jury, and after the jury had retired to consider as to their verdict, one of the jurors was observed talking in a confidential manner with one Jack Frame, who was not a member of the jury, and none of the other jurors were present or in the room with them at the time these two persons were so engaged. Among other instructions given by the court was the following:

"Gentlemen, you will now retire, in charge of the officer, to consider of your verdict. If you do not agree before court adjourns, you may seal your verdict, and give it to your foreman, who will hold it until court convenes, when he will present it to the court in your presence, that is, after you have agreed on your verdict. If you do, you may separate until court again

convenes, which will be at 8 o'clock to-morrow morning.''

The court then admonished the jury as follows: '' If you do separate, during the time you are separated you are to say nothing about your verdict, not even that you have agreed upon one.'' About 4 o'clock of the following morning the jury informed the officer having them in charge that they had agreed upon a verdict, and thereupon they were allowed to separate, and did separate until 8 o'clock, when court again convened and the sealed verdict was presented by the foreman and read by the clerk. Thereupon the attorney for the plaintiff in error demanded a poll of the jury. One of the jurors answered that the verdict read was not his verdict, and the court, over the objection of the plaintiff in error, directed the jury to retire until they could agree upon such a verdict as they were willing should stand; that when they had done so they might return into court. This was about 8 : 30 A. M., at which time the court adjourned until afternoon. About one hour and a half after the jury had retired they again informed the officer having them in charge that they had agreed upon a verdict, and the jury were then allowed by the officer to separate until about 1 : 30 o'clock P. M. of the same day, without being admonished by the court. When the court again convened, the attorney for the plaintiff in error again asked that the jury be discharged from further consideration of the cause, and that no verdict be received from them, alleging their disqualification on account of having been allowed to separate without being admonished by the court, and without any authority from the court or the counsel, which motion was overruled by the court, and the ruling

6—APP.

Surface v. Douglas.

excepted to, and the verdict of the jury was presented, and read in the identical language as at first presented. The record shows that at each of these separations the jurors were around on the streets and at different places in the town, mingling with other persons while so separated, and no showing was made, or attempted to be made, that during said separations nothing occurred to prejudice their minds in relation to the case. As was said in *Ehrhard v. McKee*, 44 Kas. 715 :

"The violation of the statutory provisions with reference to separation and admonition, gives rise to a prejudice which will vitiate the verdict unless it affirmatively appears that no prejudice was suffered by the losing party. . . . Where there is a plain violation of statutory requirements enacted for the preservation of the purity of the verdict . . . it devolves upon the prevailing party to show that the improper conduct did not prejudice the substantial rights of his opponent. In the absence of such a showing by the defendant in error, a new trial should have been granted."

The record discloses that the attorney for the defendant in error, in his closing argument to the jury, referred to the widow and children of the deceased in the following language : "This poor woman is now sick and at home with her two helpless children and unable to attend this trial, and has her living to make and her helpless children to maintain, and all this administrator wants to return out of an estate of $2,000 is $150, and this is all she has left to pay her mortgage with." The attorney for the plaintiff in error objected to such language to the jury, as it was outside of the evidence in the case. The court then directed the attorney for the defendant in error to keep within the record, to which the attorney re-

sponded : "All right; that is just what I am doing."
During the same argument to the jury, the attorney
for the defendant in error also used the following
language : "This poor woman is sick and has her
children to maintain, and this administrator has been
wasting this estate. Just consider how you would
like it if you were to die, to have the property you
have accumulated thus squandered by an administra-
tor and your helpless family thrown out upon the
world without anything." The attorney for the
plaintiff in error again interposed an objection as fol-
lows : "I object to such language being used to this
jury. It is outside of the evidence of this case."
The attorney for the plaintiff in error replied, "Very
well." There was no evidence introduced at the trial
showing the value of the estate, either personal or
real, nor the liabilities of the estate ; neither was
there any evidence as to the existence of any mort-
gage on the real estate belonging either to the estate
or widow ; nor as to the physical or financial condi-
tion of the widow ; nor that the administrator had
been wasting the estate. Upon the hearing of the
motion for a new trial, the affidavits of two of the
jurors, including the one who dissented from the ver-
dict as first announced, were read, in which it was
alleged that language similar to that employed by the
attorney for the defendant in error in his closing ar-
gument to the jury, to which objection was made at
the time, was frequently used by different members of
the jury in the discussion, during their deliberations,
to influence the affiants in favor of agreeing to a ver-
dict for the defendant in error.

In *Winter v. Sass*, 19 Kas. 556, the counsel for the
plaintiff, in his closing argument to the jury, stated
that a former jury had, on less evidence, found for

the plaintiff, and when the other side objected to this statement, he reiterated it, and said that the records of the court disclosed this fact. However, he afterward stated that he recalled the remarks and wished the jury not to consider the same, and the court instructed the jury that they had no business to consider the fact what the jury on a former trial of the case did; that the case on trial must be determined on the facts of the case as appear by the evidence. The supreme court affirmed the judgment of the court below, holding, however, that "whenever in the exercise of a sound discretion it appears to the court that the jury may have been influenced as to their verdict by such extrinsic matters, however thoughtlessly or innocently uttered, or that the statements were made by counsel in a conscious and defiant disregard of his duty, then the verdict should be set aside." And in *Huckell v. McCoy*, 38 Kas. 53, the supreme court says: "Where counsel for the plaintiff, in his closing argument to the jury, repeatedly makes improper remarks prejudicial to the interests of the adverse party, and such remarks are permitted to go to the jury over the objections of the adverse party, and the verdict is afterward rendered in favor of the plaintiff and may have been procured by reason of such remarks, a new trial should be granted." In this case, the remarks made by the counsel for the defendant in error, upon which error is predicated, were objected to strenuously by the plaintiff in error, yet they were not withdrawn from the jury either by the court or by the counsel. These objectionable statements had a tendency to divert the minds of the jury from the real issues in the case. They could have been made for no other purpose than to excite the passions and prejudices of the jury against the plaintiff in error, and

may have been the controlling influence in arriving at the verdict which was rendered.

The court is of the opinion that the errors complained of entitle the plaintiff in error to a new trial. The judgment of the court below is reversed, and a new trial awarded.

All the Judges concurring.